Antonio Díaz González y su esposa Josefina Martínez, peticionarios, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Tesorero de Puerto Rico, interventor.

Núm. 189.—*Sometido:* Marzo 1, 1949. *Resuelto:* Abril 11, 1949.

---

846

*Luis Tirado Géigel* y *J. J. Ortiz Alibrán,* abogados de los peticionarios; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en el alegato) y *Elmer Toro Lucchetti,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Antonio Díaz González era el principal accionista de Lahoud Freres, Inc. para el 1938. Díaz y su esposa depositaron la suma de $60,000 en el Chase National Bank en garantía de ciertas obligaciones de la corporación con el banco. El 28 de octubre de 1938 el banco llegó a la conclusión de que la corporación no le podía pagar las deudas, y aplicó los $60,000 al pago de las mismas.

El 5 de diciembre de 1938 tres acreedores continentales de la corporación radicaron ante la Corte de Distrito de los Estados Unidos para Puerto Rico una petición de quiebra involuntaria contra la corporación. El 30 de diciembre de 1938 la corporación radicó una solicitud de reorganización de conformidad con la sección 101, Capítulo X, de la Ley de Quiebras. El 17 de mayo de 1939 el Juez de Quiebras Interino informó a la Corte Federal que no era posible efectuar la reorganización. El 19 de mayo de 1939 se declaró en quiebra a la corporación.

Díaz dedujo una pérdida de $10,800 sobre 432 acciones de la corporación en su planilla de contribuciones sobre ingresos para 1938. Su esposa y él dedujeron pérdidas de $15,000 cada uno en sus planillas para 1939 por la garantía que dieron al banco. Díaz dedujo una pérdida de $20,000 para el 1940 sobre la referida garantía.

El Tesorero resolvió que la garantía de $60,000 era deducible en 1938, y no en 1939 o en 1940. Los contribuyentes radicaron una querella ante el Tribunal de Contribuciones solicitando del tribunal que resolviera (1) que la deducción de la garantía de $60,000 hecha en 1939 y 1940 era correcta, no obstante haber ellos reclamado una deducción de sólo $50,000 en sus planillas y (2) que tenían derecho a deducir en 1939 la suma adicional de $11,990 por pérdidas sufridas en las acciones de la corporación. El Tribunal de Contribuciones resolvió que la partida de $60,000 era un débito incobrable más bien que una pérdida, y que era deducible en 1938, y no en 1939. Rechazó la partida de $11,990 por falta de prueba. Expedimos el auto de *certiorari* a solicitud de los contribuyentes con el fin de revisar esta decisión.

Los errores señalados se refieren únicamente a la partida de $60,000. Este caso no nos compele a determinar si la garantía de $60,000 envolvía una deducción por pérdidas a tenor con los artículos 16(a)(4) y 16(a)(5) de la Ley de Contribuciones sobre Ingresos o una deducción de un débito

incobrable de conformidad con el artículo 16(a)(7).(1)    Se permite la deducción de una deuda incobrable cuando se concluye definitivamente que es inútil tratar de cobrarla, mientras que se permite la deducción de una pérdida tan sólo durante el año contributivo en que de hecho se sufrió.    Pero la justificación para una deducción "de cualquiera de estas clases debe demostrarse o probarse por algún 'evento identificable', o por circunstancias concurrentes que sostengan una determinación de que carece de valor."    *Helvering* v. *Smith*, 132 F.2d 965, 967 (C.C.A. 4, 1942); *Bartlett* v. *Commissioner of Internal Revenue*, 114 F.2d 634 (C.C.A. 4, 1940); *Curry* v. *Commissioner of Internal Revenue*, 117 F.2d 307 (C.C.A. 2, 1941).

Aquí el propio Díaz hizo una deducción en 1938 por el fundamento de que las acciones de la corporación habían perdido su valor en dicho año.    En 1938 Díaz se negó a darle más dinero a la corporación.    En 1938 el banco resolvió que la corporación no podía pagar sus deudas y le aplicó la garantía de $60,000 al pago de la deuda de la corporación con el banco.    La petición de quiebra involuntaria se radicó en 1938.    La corporación radicó su solicitud de reorganización en 1938.

Los contribuyentes no presentaron evidencia alguna al efecto de que el estado de la corporación en 1938 no era ruinoso.    En este caso no es decisivo el hecho de que la adjudicación de quiebra no se dictase hasta el 1939.    Sea ello como fuere en otros casos, bajo las circunstancias de éste, la adjudicación de quiebra en 1939 meramente reconoció y confirmó lo ocurrido en 1938.    Convenimos con el Tesorero en que, ya se trate la partida de $60,000 como una pérdida o como un débito incobrable, los eventos identificables necesarios para darle cualquiera de las dos clasificaciones ocurrie-

(1)Para la diferencia existente entre estas dos clases de deducciones, véanse *Spring City Co.* v. *Commissioner*, 292 U.S. 182, 189; *Reed* v. *Commissioner of Internal Revenue*, 129 F.2d 908, 912 (C.C.A. 4, 1942); *Shiman* v. *Commissioner of Internal Revenue*, 60 F.2d 65 (C.C.A. 2, 1932); 5 Mertens, *Law of Federal Income Taxation*, secciones 28.38; 30.14; Brown, *The Time for Taking Deductions for Losses and Bad Debts for Income Tax Purposes*, 84 U. of Pa.L.Rev. 41.

ron en 1938, y no en 1939. 5 Mertens, supra, secciones 28.67–68, págs. 248–61; *Annotation*, 135 A.L.R. 1430; *Joyce v. Gentsch*, 141 F.2d 891, 897 (C.C.A. 6, 1944); *Lambert et ux v. Commissioner of Internal Revenue*, 108 F.2d 624 (C.C.A. 10, 1939).

La decisión del Tribunal de Contribuciones será confirmada.

El Juez Asociado Sr. Negrón Fernández no intervino.