ALFONSO VALDÉS COBIÁN, peticionario, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; SOL LUIS DESCARTES, TESORERO, interventor.

Núm. 242.—*Sometido:* Mayo 8, 1950.   *Resuelto:* Julio 7, 1950.

*J. Alemañy Sosa,* abogado del peticionario; *Hon. Procurador General Vicente Géigel Polanco* y *Manuel J. Medina Aymat, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

A solicitud de Alfonso Valdés Cobián, expedimos auto de *certiorari* para revisar la sentencia del Tribunal de Contribuciones relacionada con deficiencias de contribuciones sobre ingresos correspondientes a los años 1939 y 1940, notificádasle por el Tesorero y confirmadas por el tribunal inferior.

 El primer señalamiento es que el Tribunal de Contribuciones erró al declarar sin lugar la contención del contribuyente de que la deficiencia para el año 1939 había prescrito. Valdés radicó su planilla del año 1939 en marzo 15, 1940. En junio 14, 1945 el Tesorero le notificó una deficiencia. En junio 25 de 1945 el contribuyente solicitó la

reconsideración y una vista administrativa. Ésta fué celebrada en octubre 4, 1945 y la resolución del Tesorero ratificando el aviso de deficiencia fué notificada en febrero 24, 1947. Valdés radicó su querella en el Tribunal de Contribuciones en marzo 24, 1947.

Bajo la sección 60 (a) (1) de la Ley de Contribuciones sobre Ingresos, según fuera enmendada por la Ley núm. 31, Leyes de Puerto Rico, 1941 ((1) pág. 479), la contribución sobre ingresos debe tasarse dentro de los siete años después de haberse radicado la planilla. Pero la sección 60 (b), según fuera enmendada por la Ley núm. 23, Leyes de Puerto Rico, 1941, Sesión Extraordinaria (pág. 73), provee que "El período durante el cual esta sección requiere que se verifique una tasación de cualquier deficiencia será prorrogado, (1) treinta (30) días si al contribuyente le hubiere sido notificada por correo de acuerdo con la subdivisión (a) de la sección 57 y no hubiere radicado apelación alguna ante el Tribunal de Apelación de Contribuciones de Puerto Rico, y (2) si se hubiere radicado alguna apelación, entonces se extenderá el período de prescripción noventa (90) días a contar de la decisión final del tribunal."

De conformidad con la sección 60 (b), el período de siete años durante el cual el Tesorero debe tasar la deficiencia queda automáticamente prorrogado por treinta días más, siempre que el término de siete años no haya expirado cuando el Tesorero notifica al contribuyente su resolución denegando la reconsideración. Este período de treinta días es principalmente para beneficio del contribuyente; le permite estar tranquilo mientras decide si recurre para ante el Tribunal de Contribuciones. Por consiguiente, bajo estas circunstancias, si no se radica alguna querella en dicho Tribunal, la tasación deberá hacerse dentro de siete años treinta días después que la planilla fué radicada. Por otro lado, si una querella es radicada en el Tribunal de Contribuciones dentro de los treinta días, el período para la tasación se prorroga según indica la sección 60 (b) (2).

En el presente caso, los siete años provistos en la sección 60 (a) (1) hubieran expirado en marzo 15, 1947, si esa disposición de ley fuera la única que gobernara el asunto. Pero, como hemos dicho, la sección 60 (b) (1) prorroga el período de tasación, después de notificarse la decisión del Tesorero sobre la reconsideración, por no menos de treinta días. Por consiguiente, el Tesorero tenía treinta días para tasar la deficiencia después que notificó a Valdés en febrero 24, 1947, su decisión en cuanto a la reconsideración. Pero antes de que transcurrieran estos treinta días, en marzo 24, 1947, Valdés ejerció su privilegio de radicar querella en el Tribunal de Contribuciones. Esto hizo que la sección 60 (b) (2) sea aplicable y nuevamente prorrogó el período de tasación según dispone la misma.

La contención del contribuyente es que bajo las circunstancias peculiares de este caso el término para tasar la deficiencia expiró en marzo 15, 1947. Arguye que el Tesorero esperó hasta muy poco antes de que el período de siete años expirara, para notificarle su resolución sobre la reconsideración. Bajo tales circunstancias, según Valdés, el Tesorero corre el riesgo de que el período de siete años expire en una fecha dentro del término de treinta días, antes de que el contribuyente radique su querella en el Tribunal de Contribuciones. Alega que bajo estas circunstancias, los únicos remedios disponibles para el Tesorero son la renuncia de la prescripción por el contribuyente o una tasación de emergencia.

Creemos que este argumento está en pugna con los términos expresos de la sección 60 (b) (1). Ésta no distingue entre períodos de siete años que están próximos a vencer y períodos de siete años, cuya fecha de expiración está aún distante. Sin excepción, aumenta por treinta días el término de siete años, siempre que la decisión del Tesorero sobre la reconsideración sea notificada dentro de los siete años. Y aquí la actuación del contribuyente al radicar su querella antes de que transcurriera el período de siete años y treinta

días, puso en juego la sección 60(*b*) (2), prorrogando en esa forma el término para la tasación.

El contribuyente descansa en nuestro lenguaje en *Buscaglia, Tes.* v. *Tribunal de Contribuciones; Ana María Sugar Co., Int.*, 67 D.P.R. 693, 699. Pero dicho lenguaje y el caso de *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 67 D.P.R. 706 (*Per Curiam*), están predicados en la proposición de que el Tesorero no puede hacer uso de los treinta días si transcurren los siete años *antes* de que él emita su decisión denegando la reconsideración. Pero en este caso, como ya hemos visto, la decisión del Tesorero fué dentro de los siete años. Por lo tanto es de aplicación la sección 60(*b*) (1) y ésta prorroga el período para la tasación. No erró el Tribunal de Contribuciones al declarar sin lugar la defensa de prescripción en cuanto a la deficiencia de 1939.(¹)

■■ El segundo error va dirigido contra la negativa del Tesorero y del Tribunal de Contribuciones en permitir a Valdés deducir de su ingreso bruto correspondiente al 1939 como "gastos de representación" la suma de $3,000 que alega gastó en gestiones de dos corporaciones de las cuales él era un oficial. El Tribunal de Contribuciones resolvió que la declaración del contribuyente dejó de demostrar (1) en detalle bien las cantidades, o naturaleza o propósito de estos gastos, o (2) un acuerdo entre las corporaciones y Valdés de que el último, en su carácter de tal oficial, pagaría de su propio peculio gastos de agasajos y otros similares para beneficio de las corporaciones. No podemos decir que hubo error de derecho en la forma en que el Tribunal de Contribuciones apreció los hechos sobre estas cuestiones. Por lo tanto no se cometió el segundo error.

■ El tercer señalamiento es que el Tribunal de Contribuciones cometió error al no permitir al contribuyente dedu-

---

(¹) En cuanto a la diferencia entre la notificación de una deficiencia y la tasación de la misma, véanse *Irizarry* v. *Tribunal de Contribuciones*, ante, pág. 191; *Buscaglia, Tes.* v. *Tribunal de Contribuciones; Ana María Sugar Co., Int.*, 67 D.P.R. 693; *Ballester* v. *Tribunal de Contribuciones*, 60 D.P.R. 768, 772.

cir en 1939 el importe de la pérdida ocurrida en 1938 por una explosión en una lancha de motor de su propiedad. Aquí tampoco existe controversia substancial en cuanto a la ley. La única cuestión es si el Tribunal de Contribuciones erró al determinar si los hechos justificaron posponer la deducción, de parte de la pérdida, hasta 1939.

La explosión ocurrió en agosto 25, 1938. El contribuyente dedujo $4,000 en su planilla de 1938 como pérdida parcial. Hizo una deducción adicional de $3,139.50 en su planilla de 1939 alegando que le fué imposible determinar hasta 1939 que la lancha había sido destruída totalmente por la explosión. El Tesorero rechazó esto último por el fundamento de que toda la deducción tenía que hacerse en 1938.

La sección 16 (a) (6) de la Ley de Contribuciones sobre Ingresos provee para deducciones en casos de esta naturaleza de "pérdidas sufridas durante el año contributivo . . . ". La deducción por pérdidas difiere de la deducción por deudas incobrables. La deducción por deuda incobrable es permitida cuando se concluye definitivamente que es inútil tratar de cobrarla. Esto contrasta con la deducción por una pérdida, la cual se permite tan sólo durante el año contributivo en que de hecho se sufrió. *Díaz* v. *Tribunal de Contribuciones*, 69 D.P.R. 845; *Commissioner of Internal Revenue* v. *MacDonald Eng. Co.*, 102 F.2d 942 (C.C.A. 7, 1939). Por consiguiente, la regla corriente es que una pérdida es deducible cuando de hecho físicamente ocurrió la pérdida. Pero esta regla no se aplica automáticamente a todos los casos. Un contribuyente puede aplazar la deducción si puede demostrar que durante el año en que ocurrió la pérdida física no podía razonablemente esperarse de él que tuviera suficiente información para determinar con algún grado de exactitud el importe de la misma. 5 Mertens, *Law of Federal Income Taxation*, sec. 28.50, pág. 208; *Pike County Coal Corporation* v. *Commissioner*, 4 B.T.A. 625 (1926). Véanse *Boehm* v. *Commissioner*, 326 U.S. 287 (1945); *Boston Consol. Gas Co.* v. *Commissioner of Internal Rev.*, 128 F.2d 473 (C.C.A.

1, 1942) ; Stuetzer, *Embezzlement Losses*: *Time For Deduction*, 4 Tax L.Rev. 195. *Cf. Commissioner of Int. Revenue* v. *Highway Trailer Co.*, 72 F.2d 913 (C.C.A. 7, 1934). Pero si con razonable diligencia el contribuyente pudo en el mismo año establecer con bastante certeza la naturaleza y el importe de la pérdida, no le está permitido posponer la deducción para el próximo año por haber dejado de tomar las medidas necesarias al efecto. *Borden* v. *Commissioner*, 101 F.2d 44 (C.C.A. 2, 1939). En análisis final, cada caso descansa sobre sus propios hechos en cuanto a "cuándo una pérdida de hecho ha ocurrida verdaderamente . . . " (*Pike County Coal Corporation* v. *Commissioner*, supra, pág. 627), teniendo el contribuyente el peso de la prueba cuando intenta posponer la deducción por la pérdida.

El Tribunal de Contribuciones reconoció la regla antes mencionada. Distinguió el caso de *Pike County* precisamente porque en éste fué necesario devolver a los fabricantes cierta complicada maquinaria industrial damnificada por un fuego en octubre, para una reparación que no pudo llevarse a efecto hasta alguna fecha en 1919. En el caso de autos el Tribunal de Contribuciones resolvió que hubo una demora inexplicable en la contratación de peritos y en rendir éstos sus conclusiones. También resolvió que los peritos pudieron haber determinado sin dificultad desde agosto 25, 1938 a marzo 15, 1939, fecha en que hay que radicar la planilla para 1938, que la lancha era una pérdida total. No podemos decir que el Tribunal de Contribuciones cometiera error de derecho en la apreciación de la prueba sobre este particular.

El cuarto error se relaciona con la misma cuestión del segundo, excepto que envuelve el 1940. Por los motivos ya expuestos, somos de opinión que no se cometió este error.

■ El quinto señalamiento es que el Tribunal de Contribuciones cometió error al rechazar una deducción en 1940 por una deuda incobrable de $15,000, la cual fué supuestamente incurrida en 1928, de conformidad con la sección 16 (*a*) (7) de la Ley de Contribuciones sobre Ingresos.

En 1928 Valdés fué candidato a senador por el distrito de Mayagüez. A las 11:30 de la mañana del día de las elecciones, Valdés fué avisado de que los electores se estaban negando a votar porque no se les habían reembolsado los gastos incurridos en ir al pueblo a votar y porque no tenían dinero para pagar sus almuerzos. Valdés adelantó $15,000 a ciertos miembros del Comité Local de su partido para ser repartidos entre los electores, en el entendido de que si las elecciones se perdían, dicha suma no tendría que ser devuelta. Sin embargo, de salir triunfante su partido, el dinero tendría que ser pagado a Valdés por medio de cuotas que se cobrarían a los empleados municipales de Mayagüez. Valdés salió electo y su partido ganó las elecciones en dicho municipio. El Comité Local de su partido reconoció la "deuda", pero ésta nunca ha sido satisfecha. En 1940, como resultado de las elecciones de ese año, Valdés estimó que la "deuda" era incobrable.

No es necesario que discutamos la naturaleza de esa transacción, excepto para decir que de su faz aparece claramente que nunca hubo obligación legal alguna de parte de ninguna persona o entidad jurídica para pagarle a Valdés. No existiendo tal deuda, no podía deducirse la misma como incobrable. El caso de *J. S. Cullinan* v. *Commissioner*, 19 B.T.A. 930 (1930), el cual fué resuelto en contra del contribuyente, es a todas luces igual al de autos.

*La decisión del Tribunal de Contribuciones será confirmada.*

El Juez Asociado Sr. Negrón Fernández se inhibió.