JAIME RAMÓN BRUGAT, demandante y recurrido, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* 12682 *Resuelto:* 31 de enero de 1962

442

*Hiram R. Cancio, Secretario de Justicia y Carlos G. Latimer,* abogado Departamento de Justicia, abogados del recurrente; *Rivera Zayas, Rivera Cestero & Rua,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El alcance de la presunción de corrección (¹) de las determinaciones del Secretario de Hacienda fue meridianamente expuesto en *Carrión* v. *Tesorero de P. Rico*, 79 D.P.R. 371, 381-2 (1956) en las siguientes palabras:

"Según doctrina jurisprudencial reiterada, en virtud de dicha presunción, el Secretario de Hacienda no tiene que presentar prueba alguna para demostrar la corrección de sus determinaciones contributivas, mientras no se ofrezca y reciba evidencia creíble y razonable que sostenga las contenciones del contribuyente. Sin embargo, una vez que exista tal prueba en los autos, la presunción desaparece y toca entonces al Secretario de Hacienda presentar evidencia en apoyo de sus contenciones. Si lo hace, el tribunal sentenciador debe determinar los hechos envueltos en el litigio como en cualquier otro caso civil: a base de la preponderancia de la prueba. El único efecto adicional de la referida presunción en la realidad no se presenta sino como excepcional: al terminar de practicarse la prueba y quedar sometido el caso, si el juez sentenciador determina que la evidencia de ambas partes sobre un punto litigioso está en perfecto equilibrio, entonces debe fallar a favor del Secretario de Hacienda porque sobre el contribuyente recae también la carga de persuadir al juzgador. En otras palabras, el contribuyente sobrelleva en realidad dos *riesgos*: el riesgo de que no se presente prueba y, además, el riesgo de que no se logre persuadir al juez. Debemos hablar en términos de '*riesgos*' porque, en el curso del juicio, cualquiera de las dos partes puede presentar la evidencia que resulte suficiente para cumplir con ambos aspectos del peso o carga de la prueba."

En el presente caso, cuyos hechos pertinentes pasamos a resumir, es preciso tener en mente la doctrina antes expuesta para disponer de un aspecto del mismo que envuelve una cuestión procesal hasta ahora no explorada en esta jurisdicción.

---

(¹) Sobre la presunción de corrección, véanse además, *Borinquen Home Corporation* v. *Secretario de Hacienda*, 84 D.P.R. 161 (1961); *Vilanova* v. *Secretario*, 83 D.P.R. 74 (1961); *Collazo* v. *Secretario de Hacienda*, 82 D.P.R. 650 (1961); *Vilanova* v. *Secretario*, 78 D.P.R. 807 (1955); *Compañía Marítima E. Moreno y Cía.* v. *Descartes*, 78 D.P.R. 589 (1955); *Soto* v. *Secretario de Hacienda*, 78 D.P.R. 177 (1955); *Tesorero* v. *Tribl. Contribuciones y Galiñanes, Inc.*, 70 D.P.R. 925 (1950).

En 8 de marzo de 1956 el Secretario de Hacienda notificó una deficiencia para el año contributivo de 1951 al recurrido Jaime Ramón Brugat, que se determinó al rechazar dicho funcionario una deducción reclamada por el contribuyente de la cantidad de $32,132.82, que representa el remanente de una pérdida del año anterior arrastrada para el año de la controversia. En el escrito de notificación el Secretario consignó que "(s)e rechaza esta partida *por no constituir una pérdida sufrida en las operaciones del negocio o industria a que regularmente se dedicó* ... y sí una pérdida en una inversión de capital admisible como deducción en el año 1950, *cuando la sufrió,* pero no es admisible como deducción ni arrastrable la parte no compensada, para el año 1951, de acuerdo con el párrafo (1) subdivisión (a) de la Sección (9) de la Ley." La pérdida se refería al valor de unas acciones poseídas por el recurrido Ramón Brugat en la corporación doméstica Soler y Mascaró Auto Corporation, que se había acogido a procedimientos de quiebra en 1950.

Después del trámite administrativo de rigor se confirmó la deficiencia. El contribuyente recurrió en alzada al Tribunal Superior, y específicamente alegó que:

"Alega el demandante que no existe controversia sobre el hecho de que el demandante sufrió dicha pérdida en el año 1950, pues así fue claramente determinado por el Secretario demandado al notificar la deficiencia sujeta a reconsideración el 8 de marzo de 1956; pero alega ahora el demandante que habiendo impuesto el Secretario demandado la deficiencia objeto de esta demanda sobre la base de que dicha pérdida de 1950 no constituía una pérdida sufrida en las operaciones del negocio o industria a que regularmente se dedicó el demandante, dicha deficiencia es errónea, nula, ilegal y contraria a derecho porque para los años 1950 y 1951, algunos años antes y algunos años después, el demandante se dedicaba al negocio de inversiones y en dicho negocio de inversiones sufrió la pérdida en el año 1950 en su inversión en el negocio de 'Soler y Mascaró', cuya pérdida para el año 1950 es totalmente deducible y arrastrable para el año 1951, porque fue una pérdida en el negocio de inversiones al

cual regularmente se dedicaba el demandante durante los años 1950 y 1951, y algunos años antes y algunos años después."

En la contestación formulada el Secretario negó todos los hechos expuestos en el párrafo transcrito.

Aunque no se acompañó a la transcripción de autos que se archivó en este Tribunal copia alguna de la orden dictada en la conferencia preliminar durante la misma, de la exposición hecha por el abogado del contribuyente al comienzo de la vista en el tribunal de instancia surge que el Secretario "levantó también la cuestión de que el demandante no podía tomar la pérdida en el año 1950, por entender que la pérdida, que si bien Soler & Mascaró se declaró en quiebra en el año 1950, en el año 1952 el síndico de la quiebra de Soler & Mascaró había radicado un pleito ante este Tribunal [el Tribunal Superior] contra la corporación Financial Credit Corporation; que ese pleito se había visto ante este Tribunal y que este Tribunal había desestimado la demanda, pero como se había apelado ese pleito, que no se podía tomar la pérdida en el año 1950 sino en el año en que el Tribunal Supremo desestimara el pleito". (T.E., págs. 3 y 4.) (²) Se anunció además que el demandante ofrecería prueba para establecer que su inversión en la mencionada corporación "había quedado totalmente perdida" y que "además" tenía derecho a arrastrarla porque fue una pérdida sufrida en su industria o negocio (T.E., pág.4). Es conveniente indicar que el Secretario no había solicitado, ni en momento alguno solicitó, que se enmendara la contestación que había presentado a la querella para incluir esta defensa afirmativa sobre la inexistencia de la pérdida. (³) El Tribunal de instancia, después de es-

---

(³) Aun cuando en el curso de la vista celebrada el representante del Secretario le dio mayor importancia a la cuestión relacionada con la improcedencia de la deducción por tratarse de una pérdida que no surgió de la industria o negocio del contribuyente, es innegable que en varias ocasiones se refirió a la inexistencia de la pérdida (T.E., págs. 5, 7, 12, 13).

(²) La sentencia del Tribunal Superior declarando sin lugar la demanda interpuesta por el síndico de Soler y Mascaró a que se refiere el abogado del contribuyente fue recientemente confirmada por este Tribunal. *Monclova* v. *Financial Credit Corp.*, 84 D.P.R. 770.

cuchar la exposición de las partes sobre la cuestión en controversia, indicó que "el tribunal va a determinar si la parte de la pérdida que fue arrastrada para el año 1951 es o no deducible como cuestión de derecho, si es o no permisible el arrastre. *Eso es todo* lo que va a resolver el Tribunal y considerar en este pleito". (Bastardillas nuestras.) El Secretario solicitó la reconsideración de esta resolución del tribunal por entender que ello le privaba "de una defensa buena . . . de que no existe tal pérdida. . . ." (⁴)    (T.E., pág. 13.)

Nos corresponde determinar a)  si durante el trámite judicial de la impugnación de determinaciones administrativas de deficiencias el Secretario de Hacienda puede sostener su actuación por fundamentos adicionales y distintos a los expuestos en la notificación hecha al contribuyente; y b) en caso afirmativo, cuáles son las limitaciones y consecuencias de ello. ▇

a)  Aun a riesgo de incurrir en una perogrullada, es necesario indicar que en una querella contributiva la cuestión en controversia es la responsabilidad contributiva del querellante según ésta surge de las determinaciones y ajustes hechos por el Secretario en relación con la declaración presentada.    El objeto único de la controversia es la procedencia de estas determinaciones y ajustes, y no los fundamentos aducidos para tales determinaciones y ajustes. (⁵)  De ahí que en la etapa de revisión judicial el Secretario pueda aducir fundamentos adicionales o inconsistentes para sostener su determinación administrativa.   Es decir, la actuación administrativa puede ser sostenida por cualquier fundamento,

---

(⁴) Aparentemente el juez recurrido le dio gran importancia al hecho de que no se había notificado deficiencia alguna para el año anterior de 1950 en que se reclamó como deducción parte de la pérdida.

(⁵) *A fortiori*, la misma regla se aplica cuando en la notificación no se ha señalado ningún fundamento específico para el ajuste del ingreso del contribuyente, *Standard Oil Co.*, 43 B.T.A. 973, 998 (1941).  Claro está que en estas circunstancias el contribuyente puede recurrir a los procedimentos de descubrimiento de prueba para lograr definir la posición del Secretario en cuanto a la razón o fundamento que motivó el ajuste.

aun cuando el mismo no haya sido considerado al determinar la deficiencia, *Hormel* v. *Helvering*, 312 U.S. 552 (1941); *Helvering* v. *Gowran*, 302 U.S. 238 (1937); *Blansett* v. *United States*, 283 F.2d 474 (CA 8, 1960); cf. *Bernstein* v. *Commissioner*, 267 F.2d 879 (CA 5, 1959). En el presente caso el *issue* real es si la partida impugnada se incluyó indebidamente en el ingreso tributable del contribuyente o si éste tiene derecho a que se le conceda como deducción. ■

b) Sin embargo, parece justo que cuando esto ocurra se requiera que estos otros fundamentos se aleguen específicamente por vía de defensa afirmativa. *Jacob M. Kaplan*, 21 T.C. 134, 147 (1953); *Lorenz Co.*, 12 T.C. 263, 270 (1949); *Wentworth Manufacturing Co.*, 6 T.C. 1201 (1946). Sólo así el contribuyente estará advertido de la posición asumida por el Secretario y estará en condiciones de prepararse adecuadamente para la vista del caso. A la alegación de estos fundamentos son aplicables las reglas procesales vigentes relativas a las alegaciones en un pleito civil ordinario, especialmente en cuanto se refiere a la forma de y tiempo para alegar (Reglas 10.1 y 10.8), enmiendas a las alegaciones (Regla 13.1), y enmiendas para conformar con la prueba presentada (Regla 13.2). ■

Ahora bien, es preciso dejar establecido claramente que en cuanto a estos fundamentos adicionales que el Secretario puede plantear en el trámite judicial de revisión y que no consignó oportunamente en la notificación de deficiencias, no le cobija la presunción de corrección y que, como en el caso común de toda defensa afirmativa, le correspondería el peso de la prueba.([6]) *Raymond W. Watts*, núm. 60,182, P-H

---

([6]) La Regla 32 de la Corte de Contribuciones Federal, específicamente dispone que "el peso de la prueba corresponderá al peticionario, excepto cuando otra cosa se disponga por estatuto, y excepto que en relación con cualquier materia nueva alegada en su contestación, le corresponderá al querellado". Podría argüirse que los casos citados en el texto de esta opinión responden a la existencia de esta disposición expresa, pero ello no tiene importancia en vista de que los procedimientos contributivos se rigen localmente por las Reglas de Enjuiciamiento Civil, y, bajo éstas, las

Memo T.C. (1960) (en el cual el Comisionado había rechazado una pérdida reclamada en la venta de acciones por el fundamento de que la transacción era simulada, y posteriormente en el alegato adujo como fundamento adicional que no se había establecido el costo o base de las acciones vendidas, impidiendo así, calcular el importe de la pérdida, y se resolvió que el Comisionado no podía levantar este nuevo fundamento e invocar la presunción de corrección a su favor, y que como le correspondía el peso de la prueba y ninguna había presentado al efecto, procedía la desestimación de la cuestión) ; *A. F. Lowers Lumber Co.*, Núm. 60,141 P-H Memo T. C. (1960) ; *Leon Papineau*, 28 T.C. 54, 57 (1957) ; *Sheldon Tauber*, 24 T.C. 179, 185 (1955). En general, véanse, Mertens (revisión Zimet), *The Law of Federal Income Taxation*, ed. 1958, vol. 9, §50.61 a 50.64; Casey, *Federal Tax Practice* (1955), vol. 2, secs. 7.3—7.5 y 7.24—7.27; Balter, *Rules of Evidence Applicable in Proceedings Before the Tax Court of the United States: Burden of Proof and Presumptions*, págs. 20-28; Paul, *A Plea for Better Tax Pleading*, 18 Cornell L. Q. 507, 515-517 (1933) ; Copelon, *Practical Problems on Burden of Proof in Civil Trials*, 10 N.Y. U. Tax Inst., 865 (1952). Esto es especialmente cierto cuando, como en el caso de autos, la adjudicación de la procedencia del fundamento adicional depende principalmente de la presentación de prueba oral y documental. Con más rigor aun debe aplicarse en aquellas situaciones en que el fundamento adicional aducido es inconsistente con las razones expuestas en la notificación de deficiencia para efectuar el ajuste que origina la deficiencia. *Revell Inc.* v. *Riddell*, 5 A.F.T.R. 2d 455, 273 F.2d 649 (CA

---

defensas deben probarse por la parte que las alega, lográndose, por tanto, el mismo resultado. En una publicación de Commerce Clearing House, Inc. intitulada *Procedure and Practice Before the Tax Court of the United States*, 16ª. ed. (1956), pág. 137, se dice que esta excepción a la regla sobre el peso de la prueba es una materia en la cual se ha aplicado el principio general de evidencia al efecto de que corresponde el peso de la prueba de un hecho a la parte que lo alega.

9, 1959) ; *W. H. Weaver*, 32 T.C. 411, 432 (1959) ; *Service Life Ins. Co.*, 6 A.F.T.R.2d 5481 (U.S.D.C. Neb. 1960) ; *Estate of William Beale Hibbs*, 16 T.C. 535 (1951) ; *Hull* v. *Commissioner*, 87 F.2d 260, 261 (CCA 4, 1937) ; o cuando es en el curso del juicio que se adelanta el nuevo fundamento para sostener la determinación, *Massingale* v. *United States*, 3 A.F.T.R.2d 995 (U.S.D.C. Ariz. 1959). ■

Claro está, cuando el fundamento invocado en la notificación de deficiencia está concedido en términos amplios y abarcadores (7) el Secretario puede descansar durante el juicio en cualquier fundamento específico que esté comprendido en el motivo expuesto en la notificación, y aún así tendría la presunción de corrección. *C. D. Spangler*, 32 T.C. 782 (1959), 278 F.2d 665 (CA 4, 1960), cert. denegado 364 U.S. 825 (1960) ; revocando *Thomas Wilson*, 25 T.C. 1058, 1066 (1956) ; *Sidney* v. *Commissioner*, 273 F.2d 928 (CA 2, 1960) ; *Arthur Sorin*, 29 T.C. 959 (1956), 271 F.2d 741. [9–10]

En el presente caso el Secretario podía plantear dentro de la controversia judicial la alegación sobre la inexistencia de la pérdida arrastrada que se reclamaba. Sin embargo, por tratarse de una defensa afirmativa, que era además inconsistente con las razones aducidas en la notificación de deficiencia, (8) le correspondía el peso de la prueba para establecerla a los fines de derrotar la impugnación del contribu-

---

(7) Pueden citarse como ejemplos la inclusión de determinadas cantidades en el ingreso del contribuyente haciendo referencia a la definición de ingreso bruto sin particularizar el concepto del ingreso, el rechazo de una deducción refiriéndose a que la cantidad reclamada no es una deducción admisible, etc. Al igual que en el caso de la notificación que no aduzca fundamento alguno, el contribuyente puede, mediante los procedimientos de descubrimiento de prueba, limitar la controversia a fundamentos específicos.

(8) Una lectura de la notificación revela que el Secretario aceptó la ocurrencia de la pérdida en el valor de las acciones en 1950: se refiere en la explicación de las partidas alteradas a que la pérdida es una procedente de una inversión de capital "admisible como deducción en el año 1950, *cuando la sufrió*", alude a la parte "no compensada" como inarrastrable para el año 1951, y se refiere a una sección específica de la ley—Sección 9(a)(1)—para fundamentar su determinación.

yente.    Aunque no se enmendó la contestación para incluir esta defensa afirmativa, (⁹) estamos satisfechos de que se planteó durante la conferencia preliminar y que el querellante estaba advertido de la posición del Secretario.   La omisión del Secretario de alegar específicamente la defensa o de solicitar se le permitiera enmendar su contestación indudablemente influyeron en el tribunal a quo para que limitara la controversia a la determinación de la arrastrabilidad de la pérdida.

Para una justa adjudicación de la controversia *se dejará sin efecto la sentencia dictada y se devolverá el caso para que el tribunal de instancia reciba prueba sobre la defensa especial de inexistencia de la pérdida*(¹⁰) *y haga las correspondientes determinaciones.*

---

(⁹) Aparentemente el Secretario descansó en que la negativa del párrafo quinto de la querella era suficiente para este fin.   No lo creemos así, pues, apreciada dicha alegación en conjunto, llanamente plantea la improcedencia de la actuación administrativa a base del único fundamento que hasta entonces se había aducido, o sea, que no se trataba de una pérdida sufrida en la industria o negocio del contribuyente.

(¹⁰) Sobre este particular, véanse, Artículo 120, en relación con el artículo 123 del Reglamento Núm. 1 de la Ley de Contribución sobre Ingresos de 1924; *Boehm* v. *Commissioner of Internal Revenue,* 326 U.S. 287, 294 (1945); *United States* v. *White Dental Mfg. Co.,* 274 U.S. 398 (1927); *Denver & Río Grande Western Railroad Co.* v. *Commissioner,* 279 F. 2d 368, 375 (CA 10, 1960); *In re Harrington,* 1 F. 2d 749 (Mo. 1924) *Walter E. Templeman,* 20 B.T.A. 493 (1930); Mertens, *op. cit.,* vol. 5 §26.68; Lynch, *Losses Resulting from Stock Becoming Worthless—Deductibility under Federal Income Tax Laws,* 8 Ford L. Rev. 199 (1939); Brown. *The Time for Taking Deductions for Losses and Bad Debts for Income Tax Purposes,* 84 U. of Pa. L. Rev. 41, 46 (1935); cf. *Valdés* v. *Tribunal de Contribuciones y Tesorero, Int.,* 71 D.P.R. 716 (1950); *Díaz* v. *Tribl. de Contribuciones,* 69 D.P.R. 845 (1949).