PERFECTO y ANTONIA RODRÍGUEZ VIERA, ETC., demandantes y recurrentes, *v.* SECRETARIO DE HACIENDA, demandado y recurrido.

*Número:* 343     *Resuelto:* 31 de diciembre de 1963

*Manuel I. Vallecillo,* abogado de los recurrentes; *J. B. Fernández Badillo, Procurador General,* y *J. F. Rodríguez Rivera, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: El Secretario de Hacienda preparó declaraciones de oficio al contribuyente "Perfecto y Antonia Rodríguez Viera" y le notificó deficiencias para los años contributivos 1945, 1946, 1947, 1948 y 1950, ([1]) bajo el supuesto de que durante los períodos indicados los hermanos Rodríguez realizaron negocios agrícolas—explotación de una finca de cocos—como una empresa común. La referida entidad advino a la nómina fiscal con motivo del fallecimiento en 7 de noviembre de 1945 de don Perfecto Rodríguez Pérez.

1—En cuanto al año 1945 la declaración de oficio considera como ingresos de la entidad el importe recibido de la venta de un inventario de 694 sacos de cocos ya tumbados y recolectados por dicho causante cuando ocurrió su óbito. Es preciso consignar aquí que las partes expresamente estipularon que este inventario "constituía parte de los bienes relictos al fallecimiento de don Perfecto Rodríguez Pérez," que eran un activo del caudal hereditario a ser distribuido entre sus cuatro hijos Perfecto, Antonia, David y José. Los cocos habían

---

([1])A los fines de poner a este Tribunal en mejores condiciones para resolver sobre pleitos de impugnación de deficiencias es recomendable que los tribunales de instancia requieran la presentación en evidencia de las declaraciones de ingresos y las notificaciones de deficiencias. Después de todo, esta prueba constituye en sí la etapa inicial de la controversia.

sido cosechados en una finca que el causante la tenía arrendada a los dos primeros. Los recurrentes Perfecto y Antonia terminaron las gestiones necesarias para la venta de la cosecha para lo cual incurrieron en gastos ascendentes a $1,145.10 y dispusieron de la misma por venta al señor Alberto Biascoechea a principios de diciembre del mismo año, por precio de $8,011.00. En las declaraciones individuales de ingresos correspondientes al año 1945, los recurrentes incluyeron como ingreso el precio recibido y reclamaron como deducción los gastos incurridos, luego de atribuirse ambas partidas por mitad.

Después de hacer una exposición detallada de los hechos para concluir que en efecto los recurrentes constituían una empresa común para fines contributivos, el tribunal a quo expresó que "Lo que dejamos concluido incluye también la venta de los cocos que quedaron en la finca al terminarse el arrendamiento de la finca en 1945. No sabemos los términos del contrato de arrendamiento en cuanto a la disposición de los productos que quedaron en la finca a la fecha de dicha terminación. Asumimos con el demandado que los mismos pertenecían a los dueños arrendadores ya que éstos los hicieron suyos y los vendieron repartiéndose entre sí los beneficios. No es satisfactoria según hemos visto la evidencia ofrecida por los demandantes al efecto de que ellos luego hicieron partícipes del producto de la venta a sus hermanos. La evidencia es muy imprecisa en cuanto a dicho extremo que competía demostrar satisfactoriamente a los demandantes." Discrepamos.

No puede afirmarse que se ignoran los términos del contrato de arrendamiento respecto a la disposición de los frutos separados a la fecha de su terminación, pues como indicamos al comienzo de esta opinión las partes expresamente convinieron en que éstos formaban parte del caudal hereditario, lo que excluye la condición contractual que inexplicablemente infiere el juez a quo de que correspondían a los arrendadores.

Tampoco es criterio adecuado para sostener tal inferencia que los recurrentes dispusieron inicialmente del producto y se repartieron el precio. No se trataba de una transacción oculta mediante la cual se intentara privar a los otros herederos de su participación, pues la prueba demuestra que la gestión de venta fue realizada, no por los recurrentes, sino por su hermano José. A través de todo el testimonio de doña Antonia Rodríguez Pérez, la nota predominante—expresada con una candidez apreciable—es que se trata de una familia unida por lazos de cordialidad y afecto, especialmente de parte de los hermanos José y David que, por su condición de profesionales, no estaban muy atentos a estos asuntos de intereses. Tampoco se justifica la determinación de que no se estableció satisfactoriamente que posteriormente se corrigió este error en la distribución. El testimonio ofrecido explica que "hubo una equivocación," "por desconocimiento"; que dispusieron de los cocos bajo la creencia de que les pertenecía por ser dueños de la finca; que sus otros dos hermanos no se quejaron, y que cuando ellos comprendieron su error les reembolsaron alrededor de $1,200 en efectivo a cada uno.(²) Ni el pago ni el recibo se consignaron por escrito. Es significativo que en el interrogatorio redirecto, se afirmó que el importe de los cocos fue incluido en la declaración rendida a los fines de la imposición de la contribución sobre herencia.(³) Además, también declaró el hermano José y a pesar de que pudo interrogársele sobre el recibo por él de su participación por la venta de los cocos, nada se aclaró por el Secretario sobre este

---

(²) El tribunal de instancia determinó que no "se produjo prueba sobre cantidades pagadas a cada uno de dichos hermanos ni fechas de dichos alegados pagos." Como hemos visto, la cantidad satisfecha fue establecida y, en cuanto a la fecha, esto no es un elemento de prueba tan importante como para ser decisivo. Bastaría probar, de ser ello necesario, que el pago se efectuó antes de la vista.

(³) A preguntas del tribunal se aclaró que "los ocho mil dólares" no figuraron como parte de la herencia, pero esto no significa que en el caudal se excluyera el inventario de los cocos.

particular. (⁴) A nuestro juicio éste es uno de los casos apropiados para resolver que la presunción de corrección de las determinaciones del Secretario no puede prevalecer, pues a no otra cosa equivale el rechazo por el tribunal a quo de la explicación ofrecida por el contribuyente por el solo fundamento de que no hay "cheques cancelados, recibos o de otra forma alguna." En *Carrión* v. *Tesorero de P. R.*, 79 D.P.R. 371 (1956), en donde discutimos el alcance y efecto de tal presunción, dijimos que "El mero hecho de que no existan listas circunstanciadas de cuentas, ni comprobantes, facturas, recibos, u otros récords, no destruye automáticamente el derecho de reclamar una deducción por concepto de los gastos de viaje y de representación que sean ordinarios y necesarios." Cf. *Collazo* v. *Srio. Hacienda*, 82 D.P.R. 650 (1961).

2—A la luz de nuestra doctrina en materia contributiva, hemos examinado las determinaciones de hecho que sirvieron de base al tribunal a quo para concluir que a partir del año 1946 los hermanos Perfecto y Antonia Rodríguez Viera se dedicaron a una empresa común para explotar la finca de cocos que poseían en comunidad, y no vemos razón alguna para alterarla. (⁵)

---

(⁴)Cobra en este respecto gran significación la siguiente parte del testimonio de la recurrente.

"¿Ellos le entregaron recibo por esa cantidad?

No señor.

No hubo ningún documento?

No señor, no hay, *ellos pueden testificar.*"

(⁵)*Suárez Fuentes* v. *Srio. Hacienda*, 85 D.P.R. 388 (1962); *Sucn. Castillo* v. *Descartes, Srio. Hacienda*, 83 D.P.R. 98 (1961); *Calaf* v. *Tribunal de Contribuciones*, 73 D.P.R. 812 (1952); *Comunidad Fajardo* v. *Tribunal de Contribuciones*, 73 D.P.R. 543 (1952); *Tesorero* v. *Tribunal de Contribuciones*, 70 D.P.R. 475 (1949); *Tes.* v. *Tribunal de Contribuciones y Comunidad Fajardo*, 70 D.P.R. 99 (1949); *Vías* v. *Tribunal de Contribuciones*, 67 D.P.R. 491 (1947); *Puig* v. *Tribunal de Contribuciones*, 65 D.P.R. 734 (1946).

Véanse, además, Mertens, *Law of Federal Income Taxation* (revisión de Zimet), vol. 6, sec. 35.05; Barret y Seago, *Partners and Partnerships: Law and Taxation* (Mechise Co., 1956) C. 2, sec. 7; Little, *Federal Income Taxation of Partnership* (Little, Brown & Co., 1952), sec. 2.7; Taubman, *What Constitutes a Joint Venture*, 41 Cornell L.Q. 640 (1956).

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 13 de mayo de 1960 para anular la deficiencia impuesta a la parte recurrente para el año 1945, y así modificada, se confirmará.*