WEST INDIA MACHINERY & SUPPLY COMPANY, demandante y recurrida, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrente.

*Número:* R-67-45 *Resuelto:* 21 de febrero de 1969

*J. B. Fernández Badillo y Rafael A. Rivera Cruz, Procuradores
Generales, Elpidio Arcaya, Miguel León Zayas, Procuradores
Generales Auxiliares,* abogados del recurrente; *Segurola & Romero,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 9 de diciembre de 1946 la recurrida West India Machinery & Supply Company, en adelante denominada West India, una corporación de familia cuyo accionista principal era el señor Raymond W. Garffer—controlaba un 86% de las acciones emitidas y en circulación—adquirió por precio de $43,184.57 un inmueble sito en el barrio Monacillos de Río Piedras que comprendía una parcela de terreno con cabida de 19.4115 cuerdas y dos edificaciones de hormigón. Durante los años 1947 a 1951 West India efectuó mejoras consistentes mayormente en nuevas construcciones a un costo de $350,714.25. El costo total del inmueble ascendió, por tanto, a $394,389.83. Para fines de contabilidad la recurrida figuraba anualmente la suma de $27,896.04 como gasto de cánones de arrendamiento por el uso de dichas estructuras y el solar que ocupaba con sus negocios.(1)

Para el mes de octubre de 1957 se organizó por el señor Garffer y otros miembros de su familia la corporación Garlam Enterprise Corporation, en lo sucesivo llamada Garlam, cuyo propósito principal era adquirir inmuebles

---

(1) Este asiento de contabilidad no producía ningún efecto en cuanto a la responsabilidad contributiva pues idéntica cantidad se declaraba como ingreso.

para dedicarlos al negocio de alquiler. En 15 de enero de 1958 el señor Garffer donó a sus tres hijos menores acciones representativas de un 45% del capital emitido de Garlam. En la misma fecha Garlam compró a West India el inmueble a que nos hemos referido anteriormente, por precio de $575,000, del cual pagó un plazo inicial de $25,000, y el balance se aplazó para satisfacerlo en 25 plazos anuales de $35,206.60, para amortizar el principal y pagar los intereses. Simultáneamente Garlam cedió en arrendamiento a West India las edificaciones mencionadas y un área de 2.639 cuerdas por un canon anual de $60,000 para los años 1958 y 1959 y de $65,000 para el año 1960. ([2])

Durante los años contributivos 1958, 1959 y 1960—de 1 de octubre a 30 de septiembre del siguiente año—West India reclamó el importe total de los cánones satisfechos a Garlam como un gasto necesario e indispensable de su negocio, Sec. 23 (a) (1) (A) de la Ley de Contribución sobre Ingresos de 1954, 13 L.P.R.A. sec. 3023 (a) (1) (A). Al reajustar esta partida el Secretario determinó que la renta anual máxima que era deducible era la suma de $42,790.22, ([3]) según se indica a continuación:

| | |
|---|---|
| Costo del inmueble | |
| Costo estructuras | $350,714.25 |
| Costo 2.639 cds. | 5,870.96 ([4]) |
| | $356,585.21 |
| 12% de $356,585.21 | $ 42,790.22 |

([2]) El resultado neto de estas transacciones es que West India pagó en 1958 y 1959 a Garlam $24,793.40 en exceso de lo que la arrendadora le satisfizo a su vez por devolución del plazo de principal e intereses del precio aplazado.

([3]) Como resultado de la investigación se concedió originalmente la suma de $33,896.04 como renta anual razonable, pero en el curso del juicio se aceptó la deducción hasta $42,790.22. Véase, escolio 1 de la opinión del tribunal de instancia.

([4]) Este resultado se obtuvo dividiendo el costo original para West India por la cabida total de 19.4115 cds., lo cual arroja un costo unitario de $2,249.69 por cuerda.

El tribunal de instancia expuso la controversia sometídale para adjudicación en las siguientes palabras: "La partida de deficiencia . . . que se identifica como 'gastos por rentas del local', obedece a que el Secretario de Hacienda alega que el canon de arrendamiento pagado por la demandante West India Machinery & Supply Company a Garlam Enterprises Corporation por el arrendamiento del local que ocupa en su negocio no es un alquiler razonable y que la suma del alquiler obedece a un plan de traspaso de ingreso de una corporación a otra, las cuales corporaciones pertenecen a la misma persona y que siendo ello así tiene que hacerse una determinación de razonabilidad de alquiler y el Secretario puede impugnar la suma pagada y reducir el canon a un canon razonable." Después de considerar la prueba presentada el juez a quo sostuvo que la renta reclamada era razonable, y por tanto, deducible en su totalidad.

En la petición de revisión presentada ante nos el Secretario aparenta cambiar el énfasis en su posición sobre la indeducción parcial de los cánones, y pretende sostener que, por la inexistencia de legítimos propósitos comerciales en la venta y subsiguiente arrendamiento del inmueble, West India no tiene derecho a reclamar como gasto legítimo de su negocio el monto *total* de los cánones satisfechos. En la alternativa insiste en la irrazonabilidad de la renta reclamada.

1. En *Ramón* v. *Secretario de Hacienda*, 84 D.P.R. 440, 446-448 (1962), expusimos que en la etapa de la revisión judicial el Secretario de Hacienda puede aducir fundamentos adicionales o inconsistentes para sostener su determinación administrativa de deficiencias contributivas, pero que en tal caso, estos fundamentos deben alegarse por vía de defensa afirmativa para permitirle al contribuyente prepararse adecuadamente a enfrentarse a los mismos. Dijimos además que, en cuanto a estos fundamentos adicionales, la presunción de

corrección no ampara la actuación del Secretario, y que por ser una defensa afirmativa le corresponde a dicho funcionario el peso de la prueba para establecerla. [5] Véase, Alonso, *La Presunción de Corrección en las Determinaciones Contributivas del Secretario de Hacienda*, 32 Rev. Jur. U.P.R. 223 (1963).

■ De los autos surge que las deficiencias notificadas a la corporación recurrida obedecieron al rechazo parcial de la deducción, de la renta reclamada como gasto legítimo del negocio. Aun cuando no se presentaron en evidencia las planillas, [6] de los cómputos radicados aparece que los ajustes por este concepto fueron de $18,615.30 en 1958, $26,103.96 en 1959, y $31,103.96 en 1960. Es ésta la actuación administrativa que se impugna. En la contestación a la querella no se adujo defensa afirmativa alguna, y en el curso del juicio, no sólo no se plantea que la renta reclamada como gasto no es deducible en su totalidad, sino que la de $33,896.04 concedida administrativamente desde los inicios de la controversia como razonable se aumenta a $42,790.22. Es después de fallado el pleito que por primera vez con toda claridad se levanta por vía de reconsideración la cuestión de que la transacción de compraventa no respondió a propósitos y fines comerciales y por ende la totalidad de los cánones no era deducible. Ni en la vista en los méritos, ni para sustanciar

---

[5] En *West India Mach.* v. *Srio. de Hacienda,* 89 D.P.R. 115, 125 (1963) citamos con aprobación la norma establecida en *Ramón* v. *Secretario de Hacienda,* supra. Advertimos que el lenguaje utilizado puede dar la impresión de que cuando el Secretario aduce oportunamente, por vía de defensa afirmativa en su contestación a la querella, fundamentos adicionales para sostener una deficiencia, le cobija la presunción de corrección. Ratificamos una vez más que en esta situación la presunción no ampara la determinación administrativa.

[6] Una vez más advertimos a los tribunales de instancia de la conveniencia de requerir la presentación en evidencia de las declaraciones de ingresos y las notificaciones de deficiencias. *Rodríguez* v. *Srio. de Hacienda,* 89 D.P.R. 734 (1963).

las alegaciones de la moción de reconsideración, se presentó prueba por el Secretario. Descansó en la estipulación de ciertos hechos y en la presentada por la corporación recurrida. No podemos en esta etapa de los procedimientos, sin colocar en obvia desventaja a la contribuyente, acoger la posición en que ahora se insiste. Tal como lo consideró el tribunal a quo, examinaremos la controversia únicamente para determinar si los cánones convenidos y satisfechos constituyen una renta razonable.

2. En términos generales se autoriza la deducción de cánones de arrendamiento satisfechos "como una condición para continuar usando o poseyendo . . . propiedad sobre la cual el contribuyente no ha adquirido o no está adquiriendo título o en la cual él no tiene participación." Sec. 23 (a) (1) (A) de la Ley de Contribución sobre Ingresos, *supra*. Estatutariamente no se requiere que, para ser deducible, la renta sea razonable, pero por interpretación judicial así se ha establecido para evitar que a guisa de renta se efectúen otros pagos, especialmente, la distribución de ganancias. De ahí que cuando existe una relación estrecha entre las partes en el arrendamiento y el contrato no es el resultado legítimo y propio de una negociación entre ambos (*arm's length dealing*)—negociación en que se presume que las partes tienen intereses económicos adversos—sólo se permite la deducción de aquella porción de la renta que se hubiere requerido de un extraño en una negociación *bona fide*. (⁷)

---

(⁷) En situaciones similares hemos aplicado idénticos criterios: sobre la razonabilidad de deducciones, *West India Mach.* v. *Srio. de Hacienda,* 89 D.P.R. 115, 125 (1963), *Carrión* v. *Tesorero de P.R.,* 79 D.P.R. 371, 378 (1956), *Clínica Juliá* v. *Sec. de Hacienda,* 76 D.P.R. 509, 530 (1954); sobre la consideración de transacciones entre personas relacionadas estrechamente, *West India Mach.* v. *Srio. de Hacienda,* supra; *Clínica Juliá* v. *Sec. de Hacienda,* supra, *P.R. Ry. L. & P. Co.* v. *Buscaglia,* 62 D.P.R. 597, 612 (1943); sobre distribución implícita o encubierta de ganancias y dividendos, *Fernández* v. *Srio. de Hacienda,* 95 D.P.R. 429, 433 (1967); *Central Igualdad, Inc.* v. *Srio. de Hacienda,* 83 D.P.R. 45, 56 (1961); sobre la necesidad de que se trate de una transacción legítima de negocios, *Nieto* v. *Registrador,* 91 D.P.R. 679, 683 (1965).

Prentice-Hall, *Federal Taxes*, (ed. 1968), vol. 2, párr. 11832; Mertens, *Law of Federal Income Taxation*, vol. 4A, § 25.110. *Potter Electric Signal and Manufacturing Co.* v. *C.I.R.*, 286 F.2d 200 (1961) ; *Midland Ford Tractor Company* v. *C.I.R.*, 277 F.2d 111 (8th Cir. 1960) ; *Brown Printing Co.* v. *Commissioner of Internal Rev.*, 255 F.2d 436 (5th Cir. 1958) ; *Smith* v. *United States*, 278 F.Supp. 230 (1968). *Ernest* v. *Berry*, 64, 181 P-H Tax Ct. Mem. 1964-181.

 Una de las transacciones que con más frecuencia da margen a la consideración de estos factores es la de venta y arrendamiento simultáneo (*sale and lease-back agreements*). Procede advertir que el sólo hecho de que exista alguna relación entre las partes no impide que se conceda la deducción. Ahora bien cuando tienen intereses comunes se justifica el escrutinio cuidadoso de los acuerdos contractuales para determinar si en efecto se trata de un artificio enderezado a lograr la distribución de ingresos con miras a determinar una responsabilidad contributiva menor. Todas las circunstancias deben ser objeto de examen para discernir si en efecto la venta y arrendamiento simultáneo obedece a un propósito comercial legítimo. ([8]) Prentice-Hall, *op. cit.*, párr. 11,835; Mertens, *op. cit.*, § 25.111. *Shaffer Terminals, Inc.*, 16 T.C. 356 (1951).

En la situación que examinamos es patente que existe una relación estrecha entre ambas entidades corporativas por la identidad de sus accionistas y el control efectivo que el señor Garffer indudablemente ejerce en su administración. En este sentido no concurrimos con la apreciación del tribunal de instancia que le atribuyó inusitada importancia a unos refinamientos de título. Es precisamente la existencia de este

---

([8]) La doctrina del propósito comercial legítimo se originó en *Gregory* v. *Helvering*, 293 U.S. 465 (1935), con particular aplicación en los casos de reorganizaciones corporativas, pero se ha extendido a otras áreas del Derecho tributario, especialmente a situaciones de ventas y arrendamientos simultáneos.

factor lo que nos justifica en considerar la razonabilidad del canon convenido, a la luz de los factores económicos para tal determinación.[9]

■ En abono de su posición de que no se trata de una transacción legítima el Secretario de Hacienda señala con notable énfasis que la renta actual de $60,000 excede del duplo de la que West India consignaba en sus libros antes de la venta como costo del uso de las facilidades. Baste decir que el propio recurrente se refiere a esta suma como una mera figura de ajuste en la contabilidad de la recurrida y que ninguna significación especial tiene en relación con el valor en el mercado del derecho de arrendamiento. Si alguna duda hubiere sobre el particular sería suficiente considerar que conforme a la fórmula para la determinación en el mercado que utiliza el Secretario—el doce por ciento del costo original para West India—la renta anual ascendería a $42,790.22 y no a $27,896.04. También se arguye que la suma de $60,000 fijada como canon anual ha sido elaborada para permitir a West India satisfacer los plazos anuales de $35,206.60 para amortización de capital y pago de intereses, y que el balance de $24,703.40 es más o menos similar a la renta que originalmente se cargaba. En este cómputo se ignoran, cuando menos, los pagos anuales de contribución sobre la propiedad y seguros que la arrendadora viene obligada a hacer.[10]

La otra prueba presentada sostiene preponderantemente la determinación del tribunal a quo sobre la razonabilidad de la renta. Veamos. Aplicando el mismo método que utilizó

---

[9] No facilita nuestra labor la ausencia de prueba sobre las condiciones del contrato de arrendamiento. Tampoco se presentaron las planillas de West India, aunque sí las de Garlam, para poder determinar el impacto contributivo del alegado traslado (*diversion*) de ingresos.

[10] En el año contributivo 1959 estos pagos ascendieron conforme a la declaración de ingresos de Garlam a las siguientes sumas: contribuciones territoriales, $7,718.37; seguros, $2,035.34. Para depreciación se hizo una reserva de $7,014.24.

el Secretario para fijar una renta máxima al inmueble arrendado—derivado del Art. 6(f) de la Ley de Alquileres Razonables, según enmendado por la Ley Núm. 67 de 19 de junio de 1964, 17 L.P.R.A. sec. 186(f)—el doce por ciento anual del costo para la arrendadora Garlam sería, incluyendo toda la parcela, de $69,000 (12% de $575,000). Ya hemos visto que al concederse la deducción de $42,790.22 se arribó a esta suma atribuyendo a las edificaciones un valor en el mercado de $350,714.25, el costo original de las estructuras, y a la tierra de $5,870.96, a base del precio unitario por cuerda del costo original de West India. Sin embargo, en este último aspecto se ignoró un hecho fundamental: que el área del solar que fue objeto del arrendamiento es, por su localización, accesos, facilidades y aprovechamiento económico, la parte más valiosa de la cabida total de la finca, y que el precio unitario, sin más, no representa adecuadamente su valor en el mercado.

El estudio de valoración preparado por el perito Ing. Orlando Flores, constituye a nuestro juicio la mejor prueba que se produjo sobre el valor en el mercado del inmueble arrendado. Consideró la parcela arrendada de 2.69 cds. como una unidad con existencia propia, sin derivación a valores unitarios remotos al año 1958, y con referencia a los factores vitales de la vecindad, la localización, su mejor uso, las ventas comparables y el análisis del mercado, así como el costo de reproducción de las edificaciones arrendadas a 15 de enero de 1958, fecha en que se convino el arrendamiento. Su estimado de renta es de $62,400 hasta el 5 de octubre de 1959 en que, por la adición de una parcela adicional de 7,000 metros cuadrados,([11]) se aumenta a $70,100.([12]) Esto dispone

---

[11] En 5 de octubre de 1959 Garlam cedió en arrendamiento a West India un predio adicional de 7,000 metros cuadrados que se utilizó para almacenar maquinaria pesada. El terreno arrendado desde dicha fecha es 4.42 cds.

[12] La Oficina de Estabilización Económica estimó que la renta razonable del inmueble era de $7,212.70; o sea, en exceso de $85,000 anuales.

del planteamiento de la parte recurrente al efecto de que el juez a quo utilizó una base errónea—se refiere a la cabida del inmueble—para determinar la razonabilidad de la renta.

Es innegable que en materia de valoración y estimados pueden obtenerse distintos resultados dependiendo de la importancia relativa que se atribuya a cada uno de los factores que se consideren para la fijación del valor en el mercado. Un análisis ponderado de la prueba nos lleva a la conclusión de que la contribuyente controvirtió con prueba competente y suficiente la determinación del fisco. *Reyes García* v. *Srio. de Hacienda,* 84 D.P.R. 596 (1962). Debe, por tanto, prevalecer. (13)

*Se confirmará la sentencia recurrida dictada por el Tribunal Superior, Sala de San Juan, en 14 de octubre de 1966.*

---

(13) La misma conclusión se obtiene bien se apliquen las reglas procesales ordinarias sobre la carga de la prueba o la relativa a controvertir la presunción de corrección de las determinaciones administrativas. Ello nos releva de considerar si, dentro del sistema provisto para la revisión judicial de las actuaciones del Secretario de Hacienda, debe mantenerse "la presunción de corrección".