SOBRINOS DE IZQUIERDO, INC., demandante y apelante, *v.* R. SANCHO BONET, TESORERO DE PUERTO RICO, demandado y apelado.

Núm. 7891.—*Sometido:* Enero 25, 1940. *Resuelto:* Febrero 23, 1940.

R. *Díaz Collazo,* abogado de la apelante; *Hon. Procurador General George A. Malcolm* y R. *García Cintrón, Subprocurador Auxiliar,* abogados del apelado.

* NOTA: Véase el prefacio.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Versa este pleito sobre devolución de contribuciones pagadas bajo protesta. La demandante es una corporación organizada bajo las leyes de esta Isla dedicada a la venta de víveres, de la cual era Presidente y Gerente General Dionisio Trigo, dueño además de novecientas veinte acciones de las mil de a cien dólares que forman el capital de la corporación, correspondiendo setenta y cinco de las ochenta restantes a su esposa y a sus hijos. Las otras cinco pertenecen al Auditor de la corporación Sr. Ferrán.

Alegó en su demanda que el demandado la requirió para que pagara por contribución sobre ingresos y ella pagó bajo protesta en junio 30, 1937, las siguientes sumas: $777.85, $1,146.76, $1,484.06, $476.44 y $1,463.01, correspondientes respectivamente a los años contributivos de 1930, 1931, 1932, 1933 y 1934, y expuso el proceso seguido en Tesorería y en la Junta de Revisión e Igualamiento que culminó en los dichos requerimiento y pago bajo protesta.

Los hechos y razones en que funda su petición de devolución de las sumas pagadas se expresan como sigue:

"(9) Que el demandado, para la época en que se llevó a cabo el pago bajo protesta de las cantidades relacionadas en el apartado 4 de esta demanda, estaba impedido, y continúa con tal impedimento, de cobrar las ameritadas contribuciones sobre ingresos, siendo la actuación del demandado injusta, arbitraria y contraria a la ley, por las siguientes razones:

"(a) porque para los años 1930, 1931, 1932, 1933 y 1934, don Dionisio Trigo, Presidente y Gerente General de la corporación demandante, rindió, de acuerdo con la ley, planillas individuales de ingresos e incluyó en cada uno de los años reseñados la totalidad del sueldo pagádole por Sobrinos de Izquierdo, Inc.; habiéndose liquidado por el demandado dichas planillas individuales luego de haber sido aceptadas como correctas y habiendo el Tesorero de Puerto Rico cobrado el importe de la contribución determinada por las planillas referidas.....

"(b) porque el demandado de una manera caprichosa, sin fundamento alguno de hecho o de derecho, y, por el contrario, ignorando

la ley y en abierta oposición a la interpretación dada a esa misma ley, y en abierta oposición asimismo a resoluciones de la propia Junta de Revisión e Igualamiento (RE: San Juan Mercantile Corp.; RE: Jorge Silva, Inc.; RE: Central Machete, Inc.) declaró excesiva la compensación otorgada por la demandante a su Presidente y Gerente General por servicios que éste rindiera a aquélla en tal capacidad.

"(c) porque igualmente de una manera caprichosa, injusta, arbitraria e ilegal,...deja de deducir a la demandante el desembolso por concepto de tal compensación adicional,.....

"(d) porque igualmente de una manera caprichosa,...dejó de conceder a la demandante las cantidades reembolsadas a su Presidente y Gerente General por concepto de gastos de viaje y representación,...."

La contestación del demandado a esos hechos y razones fué:

"En cuanto al párrafo primero de la alegación 9 de la demanda, niega el demandado que en las fechas en que la corporación demandante pagó bajo protesta las contribuciones sobre ingresos relacionadas en la alegación 4 de dicha demanda, o en época alguna, estuviere, o esté en la actualidad, impedido de cobrar las ameritadas contribuciones sobre ingresos, ni por los motivos consignados en dicha alegación, ni por ningún otro motivo; negando, además, que su actuación al cobrar estas contribuciones fuera injusta, arbitraria, o en forma alguna contraria a la ley.

"(a) De los hechos contenidos en el apartado (a) de la referida alegación 9 de la demanda, el demandado admite que Don Dionisio Trigo, Presidente y Gerente General de la corporación demandante, al rendir sus planillas individuales de ingresos para los años 1930, 1931, 1932, 1933 y 1934, incluyó en la planilla correspondiente a cada uno de dichos años, la totalidad del sueldo pagádole por la demandante; admite el demandado que al liquidar las planillas individuales del Sr. Trigo aceptó como correctas las mismas en cuanto a las cantidades que figuraban como sueldos y compensación pagados por la demandante al Sr. Trigo por servicios prestados; y admite, además, que el monto o totalidad de la compensación nacida de la participación en los beneficios concedida al Sr. Trigo, no fué reconocido a la corporación demandante, ni deducido del total de donde se derivó su contribución; pero niega el demandado que su actuación a este respecto fuera injusta o en forma alguna contraria a la ley.

"(b) En cuanto al apartado (b) de la propia alegación 9 de la demanda, el demandado niega que caprichosamente,....declarara excesiva la compensación otorgada por la demandante al Sr. Trigo por servicios que éste rindiera a aquélla en su carácter de Presidente y Gerente General; y alega en contrario que las cantidades admitidas o fijadas por el demandado por tales servicios constituyen una justa y razonable compensación por los servicios prestados por el Sr. Trigo a la corporación demandante.

"(c) En cuanto al apartado (c) de la alegación 9 de la demanda, el demandado niega que actuara en una forma caprichosa,....al no aceptar como deducción a la demandante el desembolso hecho por ésta por concepto de compensación adicional a su Presidente y Gerente General, en las cantidades que se especifican en dicho apartado (c).

"(d) En cuanto al apartado (d) de la alegación 9 de la demanda, el demandado niega que actuara caprichosa, injusta, arbitraria o ilegalmente, al no aceptar como deducciones de la demandante, las cantidades pagadas por ésta a su Presidente y Gerente General por concepto de gastos de viaje y representación, en las sumas detalladas en el mencionado apartado (d)."

Celebrada la vista, se dictó sentencia por la corte de distrito declarando la demanda sin lugar, con costas pero sin incluir honorarios de abogado.

La demandante apeló. Señala en su alegato tres errores cometidos a su juicio por la corte al no decidir que las cantidades asignadas a su presidente constituían compensaciones razonables por salarios y servicios, al no decidir que la suma total reembolsada al dicho presidente por gastos de viaje fué un desembolso o gasto ordinario a satisfacer, y al apreciar en general la prueba.

En su relación del caso y opinión la corte sentenciadora narró los hechos cuidadosamente y expuso los fundamentos de su sentencia. De ella transcribimos lo que sigue:

"Rindió la demandante sus planillas de contribución sobre ingresos correspondientes a los años 1930, 1931, 1932, 1933 y 1934, y pagó la contribución correspondiente al ingreso neto que resultaba de las planillas. No satisfecho más tarde el Tesorero con ciertas deducciones que hacía la demandante por concepto de salarios o

compensación adicional al Sr. Trigo por servicios personales por él prestados, le notificó el 13 de noviembre de 1935 una deficiencia para cada uno de dichos años contributivos. No estuvo conforme la demandante con la resolución del Tesorero, e interpuso recurso de alzada para ante la Junta de Revisión e Igualamiento, la que oportunamente dictó su resolución modificando la que antes había dictado el Tesorero.

"En cada uno de los años contributivos en cuestión, con excepción del 1932, el Sr. Trigo hizo un viaje de cuatro o seis meses de duración por Europa, y a veces por Estados Unidos, en ocasiones acompañado de su esposa e hijos, y otras solo. Aprovechando su estada en el extranjero, verificaba cualquier gestión que fuera necesaria cerca de los productores, fabricantes o casas comerciales cuyos productos o negocios la corporación vende o representa en Puerto Rico, gestionando a veces nuevas agencias o consiguiendo más bajos precios o fletes más reducidos. A su regreso a Puerto Rico hacía constar en acta las gestiones realizadas, y al fin de cada año contributivo se le acreditaban las cantidades que por concepto de gastos de viaje y de compensación adicional por los servicios personales por él prestados, expresaremos más adelante.

"Durante el año 1930 que comprende desde el 1º. de abril a 31 de diciembre, la Corporación declaró los siguientes ingresos y deducciones:

"Ingreso bruto _____ $393,963.80
"Deducciones generales_____ 381,614.32
"Ingreso neto _____ 12,349.48

"Entre las deducciones generales correspondientes al año 1930, se halla la cantidad de $16,634.75 pagada al Sr. Trigo por los siguientes conceptos:

"Gastos de viaje _____ $2,500.00
"Sueldo fijo a razón de $400 mensuales durante
  9 meses_____ 3,600.00
"Compensación adicional por servicios prestados____ 10,534.75

    "Total_____ $16,634.75

"Para el año 1931 declaró los siguientes ingresos y deducciones:

"Ingreso bruto _____ $487,446.36
"Deducciones generales_____ 472,225.58
"Ingreso neto _____ 15,220.78

"Entre las deducciones generales del año 1931, se halla la cantidad de $22,629.36 pagada al Sr. Trigo por los siguientes conceptos:

"Gastos de viaje _____ $3, 726. 75
"Sueldo fijo a razón de $500 _____ 6, 000. 00
"Compensación adicional por servicios prestados _____ 12, 903. 61

"Total _____ $22, 629. 36

"Para el año 1932, se declararon los siguientes ingresos y deducciones:

"Ingreso bruto _____ $530, 700. 67
"Deducciones generales _____ 512, 133. 98
"Ingreso neto _____ 18, 566. 69

"A pesar de que durante el año 1932 el Sr. Trigo no salió de Puerto Rico, y no obstante disfrutar de un sueldo de $500 mensuales como en el año anterior, se dedujo del ingreso bruto la cantidad de $22,388.14 para pagarle al Sr. Trigo por los siguientes conceptos:

"Sueldo fijo a razón de $500 mensuales _____ $6, 000. 00
"Compensación adicional por servicios prestados _____ 16, 388. 14

"Total _____ $22, 388. 14

"Para el año 1933 se declararon los siguientes ingresos y deducciones:

"Ingreso bruto _____ $575, 123. 48
"Deducciones generales _____ 560, 079. 72
"Ingreso neto _____ 15, 043. 76

"Entre las deducciones generales del año 1933, se halla la cantidad de $18,715.80 pagada al Sr. Trigo por los siguientes conceptos:

"Gastos de viaje _____ $3, 600. 00
"Sueldo fijo a razón de $500 mensuales _____ 6, 000. 00
"Compensación adicional por servicios prestados _____ $9, 115. 80

"Total _____ $18, 715. 80

"Para el año 1934, la Corporación declaró los siguientes ingresos y deducciones:

"Ingreso bruto _____ $632, 321. 53
"Deducciones generales _____ 616, 690. 57
"Ingreso neto _____ 15, 630. 96

"Del ingreso bruto se dedujo en el año 1934 la cantidad de $20,849 pagada al Sr. Trigo por los siguientes conceptos:

"Gastos de viaje_____ $3, 850. 00
"Sueldo fijo a razón de $500 mensuales_____ 6, 000. 00
"Compensación adicional por servicios prestados_____ 10, 999. 00

"Total_____ $20, 849. 00

"La Junta de Revisión e Igualamiento al considerar el recurso de alzada interpuesto por la demandante, decidió en relación con el año contributivo de 1930, admitir las siguientes deducciones:

"Gastos de viaje_____ $2, 500. 00
"Aumentó el sueldo fijo en $3,600 a_____ 7, 500. 00
"Redujo la compensación adicional de $10,534.75 a__ 2, 152. 42

"Total_____ $12, 152. 42

"Para el año 1931, admitió la Junta las siguientes deducciones:

"Redujo los gastos de viaje de $3,726.72 a_____ $3, 000. 00
"Aumentó el sueldo fijado en $6,000 a_____ 10, 000. 00
"Redujo la compensación adicional de $12,903. 61 a__ 2, 799. 11

"Total_____ $15, 799. 11

"Para el año 1932 admitió la Junta las siguientes deducciones:

"Aumentó el sueldo del Presidente de $6,000 a_____ $10, 000. 00
"Redujo la compensación adicional de $16,388.14 a__ 3, 335. 48

"Total_____ $13, 335. 48

"Para el año 1933 decidió la Junta:

"Reducir los gastos de viaje del Presidente de $3,600 a $3, 000. 00
"Aumentó el sueldo del Presidente de $6,000 a_____ 10, 000. 00
"Redujo la compensación adicional de $9,115.80 a__ 2, 358. 95

"Total_____ $15, 358. 95

"Para el año 1934 decidió la Junta:

"Reducir los gastos de viaje del Presidente de $3,850 a $3, 000. 00
"Aumentar el sueldo del Presidente de $6,000 a____ 10, 000. 00
"Reducir la compensación adicional de $10,999 a___ 2, 358. 95

"Total_____ $15, 358. 95

"En verdad que no vemos cómo la Junta pudo aumentar el sueldo fijado por la Corporación al Presidente, pero como ésta es una cuestión que beneficia a la demandante, y es ella la que impugna la resolución de la Junta, vamos a abstenernos de considerarla.

"1.—Alega la demandante que como el señor Trigo declaró en sus planillas individuales de ingresos correspondientes a los cinco años en controversia, las cantidades que la demandante declaró haberle pagado, y que como el Tesorero cobró la contribución individual correspondiente, está ahora impedido de rechazar dichas cantidades como deducciones del ingreso bruto de la corporación demandante.

"2.—Que las cantidades pagadas por la demandante a su Presidente por los conceptos antes indicados constituyen una compensación razonable por servicios personales realmente prestados.

"El hecho de que el Sr. Trigo declarase en sus planillas individuales las mismas cantidades que declaró la demandante haberle pagado, y el hecho de que el demandado recibiese del Sr. Trigo la contribución correspondiente a dichas cantidades, no impide al Tesorero rechazar en todo o en parte dichas sumas como deducibles del ingreso bruto de la demandante. Esas circunstancias sólo indican que en verdad la demandante pagó al Sr. Trigo las cantidades en cuestión, *Austin* v. *United States,* 28 F. (2d) 677, de lo cual no abrigamos duda alguna, especialmente teniendo en cuenta que dado el interés que tiene el Sr. Trigo en la corporación demandante, bien podría decir parafraseando a Luis XIV, 'la corporación soy yo'.

"Pero no es ésa la cuestión a resolver, pues aunque se presumen válidos los contratos *infra vires* celebrados por una Junta de Directores, sin embargo, en lo que a salario respecta, su fijación no es concluyente en cuanto al Gobierno, teniendo éste el derecho que le concede la ley de investigar y determinar si lo que se dice pagado por concepto de salario lo es en realidad, o si por el contrario bajo ese disfraz se distribuyen beneficios. *H. L. Trimyer & Co.* v. *Noel,* 28 F. (2d) 781. No puede el Gobierno al determinar la contribución sobre ingresos de una corporación, bajo una ley que como la nuestra permite la deducción de salarios necesarios realmente pagados, investigar y determinar si los salarios pagados a los oficiales de la corporación están en relación con los servicios realmente prestados; pero sí puede el Gobierno atacar el pago bajo la teoría de que no es pago de salario, sino distribución de dividendos. *United States* v. *Philadelphia Knitting Mills,* 15 A.L.R. 1313.

"Sentados estos principios, y sin perder de vista que la corporación demandante tiene el peso de la prueba para demostrar que

las cantidades que alega haber pagado como salarios formaban parte de sus gastos ordinarios y necesarios para el mantenimiento y operación del negocio, *Botany Worsted Mills* v. *United States,* 73 L. ed. 282, procederemos a determinar si la evidencia de la demandante demuestra que las cantidades pagadas al Sr. Trigo y rechazadas por la Junta de Revisión e Igualamiento no fueron distribución de beneficios y sí pago de salarios por servicios necesarios realmente prestados por el Sr. Trigo.

''Como antes dijimos y así resulta de la declaración del propio Sr. Trigo, es costumbre de la demandante al finalizar el año, dedicar el 60 por ciento del beneficio neto al pago de compensación adicional de oficiales y empleados. De suerte que necesariamente hay que distribuir el 60 por ciento de los beneficios entre los oficiales, aunque, desde luego, bajo el título o denominación de 'compensación adicional'. ¿Cómo sabe la corporación anticipadamente y año tras año, que sus oficiales, a quienes se les asigna un sueldo razonable, necesariamente e indefectiblemente han de prestar servicios que requieran compensación adicional, y que la suma de las compensaciones así pagadas necesariamente ha de ser igual al 60 por ciento de una cantidad tan variable e incierta como son los beneficios anuales de una corporación dedicada al comercio? Esta sola circunstancia indica razonablemente que la llamada compensación adicional no es otra cosa que una distribución de beneficios disfrazada bajo un nombre que no le corresponde. La relación entre el sueldo fijado y la llamada compensación adicional es tan desproporcionada, que hiere la retina del más cándido. Así vemos que durante nueve meses del año 1930 el sueldo ordinario del Sr. Trigo ascendió a $3,600. Sin embargo, por los tres meses restantes se le acreditó nada menos que $10,534.75 como compensación adicional, cantidad tres veces mayor que la que se le pagó por concepto de salarios durante 9 meses de trabajo. En el año siguiente, 1931, se va más lejos aún, y a pesar de aumentarle el sueldo a $6,000 anuales, se le vuelve a asignar una compensación adicional de $12,903.61. Pero donde más evidente resulta la distribución de beneficios es en el año 1932, en que no habiendo salido de Puerto Rico el Sr. Trigo, y no habiendo tenido, por consiguiente, la oportunidad de prestar sus extraordinarios servicios en el extranjero, nos encontramos con la paradoja de una compensación adicional montante a la respetable suma de $16,388.14.

''Además, lo lógico, lo corriente, es que al hacerse una bonificación a un oficial o empleado, se le asigne una suma redonda, pero

nunca en pesos y centavos, pues los servicios extraordinarios nunca pueden medirse en esa forma tan detallada. Sin embargo, si examinamos las compensaciones adicionales acreditadas al Sr. Trigo, nos encontramos con que para el año 1930 la compensación adicional ascendió a $10,534.75; para el año 1931, a $12,903.61; para el año 1932, a $16,388.14; para el año 1933, $9,115.80; y para el 1934 la curiosa cifra de $10,999.00. Esta circunstancia es una evidente demostración de que al distribuir la compensación adicional no se ha tenido en cuenta el valor razonable de los servicios prestados, sino un factor variable, cual es la proporción entre el capital del beneficiado en la corporación y el montante del beneficio bruto, o lo que es lo mismo, lo que se ha hecho es una distribución de dividendos o beneficios.

''No nos convence la evidencia de la demandante de que la conclusión a que llegó la Junta de Revisión e Igualamiento no esté sostenida por la prueba, tanto en lo que respecta a la compensación adicional como a los gastos de viaje. Por el contrario, como hemos anticipado, la Junta más bien fué generosa con la demandante al aumentar indebidamente el sueldo regular fijado por la corporación a su Presidente. Por consiguiente, no debemos alterar la conclusión a que llegó la Junta de Revisión e Igualamiento. *General Water Heater Corp.* v. *Commissioner*, 42 F. (2d) 419; *Sunset Scavenger* v. *Commissioner of Internal Rev.,* 84 F. (2d) 453, 356.''

Hemos estudiado cuidadosamente las alegaciones, las pruebas y los alegatos y a nuestro juicio la relación de hechos y opinión que dejamos transcrita encuentra apoyo completo en las primeras y resiste victoriosamente las impugnaciones del alegato de la apelante que se encuentran además refutadas todas en el del apelado.

Se trata aquí de una de las corporaciones llamadas de familia, perfectamente legales y recomendables pero cuya naturaleza especial tiene necesariamente que influir a los efectos del juicio que se forme de sus actos.

Si una familia para administrar mejor su capital o una parte del mismo decide establecer una corporación que le proporcione el beneficio de crear una entidad separada de responsabilidad limitada, debe hacerlo con todas sus consecuencias.

Existe una estrecha correlación entre el derecho y el deber. La corporación, entidad independiente, tiene derechos y deberes siendo uno de éstos el del pago de la contribución sobre ingresos que se fija en un tipo mayor generalmente que el que se impone a las personas naturales, y si se permitiera a la familia que actuara sin restricción o fiscalización alguna en el reparto de los beneficios, ello montaría a darle carta blanca para que cumpliera o no con los preceptos de la ley contributiva.

Como se dice en 3 Paul and Mertens, Law of Federal Income Taxation, 100:

"Como quiera que las corporaciones íntimas o de familia (*close or family corporations*) se hallan generalmente libres de las restricciones que son comunes a las corporaciones con más extenso número de accionistas, ellas se entregan frecuentemente a la división de beneficios so color de pago de salarios. Más aún, en el caso de las corporaciones que están bajo el íntimo control de un grupo más o menos homogéneo, hay una mayor probabilidad de que los salarios no se satisfagan sobre una base del valor de los servicios prestados. Así vemos que en el caso de las corporaciones íntimas o de familia y aún en los casos en que existen nexos entre patronos y empleados, los pagos hechos son examinados con especial cuidado para poder saber con certeza si éstos son razonables o si en realidad no son sino salarios o transacciones para dividir beneficios. Una compensación razonable, en el caso de una corporación controlada por personas muy relacionadas (*closely held corporation*) equivaldría a lo que un contribuyente particular se hallaría dispuesto a pagar a un extraño hábil para prestar un servicio similar. Cuando un negocio de familia pertenece principalmente a tres de sus directores, a cuya habilidad en la gestión del negocio se deben las ganancias, no pueden éstos deducir el remanente, aún cuando ya hayan dispuesto el pago de un dividendo liberal y hecho amplia reserva de fondos ni aún cuando no exista ningún accionista extraño que a ello se oponga. No debe inferirse la conclusión de que los salarios son *ipso facto* irrazonables por el mero hecho de ser pagados por una corporación íntima o de familia. Sí debe inferirse que en estos casos el contribuyente se verá constreñido a aportar una prueba más fuerte de la razonabilidad de sus actuaciones."

Y como también se dice en la propia obra, a la página 82 del tomo tercero:

"Con no poca frecuencia las corporaciones, al igual que los patronos particulares pueden pagar, además del salario regular, una compensación adicional en forma de una adehala (*bonus*). Como quiera que esas adehalas se basan, si no siempre, al menos frecuentemente, en un por ciento de la ganancia, pueden estimarse como pagos de parte de los beneficios. Desde luego, los pagos hechos a los accionistas, que fluctúan de acuerdo con los beneficios, invitan a un minucioso escrutinio. El hecho de que el total esté en armonía con los beneficios tiende a demostrar que es una distribución de las ganancias. El mero hecho de que el pago sea satisfecho en forma de una bonificación no es concluyente de por sí; cuando se hacen de buena fe y como una compensación adicional por servicios prestados las bonificaciones son deducibles. El pago total, esto es, salario y adehala, debe ser razonable. El hecho de que las bonificaciones no sean por suma desproporcionada, así como el hecho de que las mismas sirvan de estímulo a los empleados, son factores a considerar al determinar su verdadera naturaleza.

"La regla no varía con respecto a las adehalas de navidad; ellas son igualmente deducibles si su finalidad es conceder compensación adicional."

La actuación de la Junta de Revisión e Igualamiento sancionada por la corte de distrito después de un amplio juicio, produce el efecto no de algo arbitrario, sino de algo verdaderamente razonable realizado en el saludable ejercicio del poder conferídole por la ley. Magnífico fué el resultado de los negocios de la corporación y amplia la retribución de su presidente y gerente en sueldos y compensaciones adicionales tal como quedó finalmente fijada por la junta. Debe la entidad separada, con vida independiente, la corporación, beneficiarse también para afianzar su crédito y tener con qué responder directamente, en su caso, a los que con ella contrataron y contraten, y para contribuir en la justa proporción con la parte que le corresponde en los gastos de la comunidad cuyas leyes permitieron su creación y aseguraron su ordenado y eficaz desenvolvimiento. Si existen beneficios, que como tales se repartan entre los accionistas después de

satisfechas las contribuciones por la corporación, pero no es justo ni debe permitirse que con el único propósito de eludir el pago de un tipo de contribución más elevado, dichos beneficios se distribuyan como si se hubieran empleado en el pago de gastos necesarios, de sueldos y remuneraciones por servicios realmente prestados.

*Debe declararse el recurso sin lugar y confirmarse la sentencia recurrida.*

El Juez Asociado Sr. De Jesús no intervino.