WEST INDIA MACHINERY & SUPPLY CO., demandante y recurrente, *v.* SECRETARIO DE HACIENDA DE PUERTO RICO, demandado y recurrido.

*Número:* 610        *Resuelto:* 1ro. de octubre de 1963

*Manuel J. Medina Aymat,* abogado del recurrente; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

En este recurso se cuestionan las determinaciones del recurrido Secretario de Hacienda negándose a aceptar como deducibles del ingreso bruto de la recurrente, West India Machinery & Supply Co., (1) ciertas bonificaciones pagadas a su Presidente y Gerente General, Raymond W. Garffer, por alegados servicios prestados en años anteriores, y (2) ciertos gastos incurridos por la recurrente durante el 1954 y 1955 en la operación y depreciación de una embarcación que poseía y usaba en parte para fomentar y mejorar, y promover buena voluntad para sus negocios. A continuación relacionamos los hechos pertinentes del caso.

La recurrente ha sido una corporación íntima, de familia, durante los años envueltos en este litigio, o sea desde el 1945 hasta e inclusive el 1955, siendo sus acciones poseídas allá para 1945 por F. J. Garffer, Jean W. L. Garffer, y los hermanos Grace, James y Raymond W. Garffer. Al retirarse de la dirección activa del negocio el primero de los accionistas nombrados, su hijo Raymond fue electo como Presidente de la empresa. Ninguno de los otros accionistas trabajó en los negocios

de la recurrente durante esos años. Al morir el padre en 1948, Raymond Garffer asumió la gerencia y dirección exclusiva del negocio. En 20 de mayo de ese año, los referidos accionistas de la recurrente suscribieron un contrato en el cual se dijo que los accionistas de la recurrente habían resuelto descontinuar la bonificación anual que se acordó pagar a Raymond Garffer del 50% de los beneficios de la recurrente después de deducir $40,000 de tales beneficios por resolución aprobada en 26 de mayo de 1945, para ser aplicada a la compra por Garffer de acciones de la recurrente hasta obtener la tenencia del 40% de todas las acciones emitidas por ésta. Se convino, además, en dicho contrato que a cambio de tales bonificaciones se emitirían a Garffer 883.1657 acciones de la recurrente con un valor de $88,316.57 en pago de lo cual Garffer suscribiría seis pagarés y que se aprobaría una resolución autorizando pagar a Garffer una bonificación en la cantidad de cada uno de dichos pagarés, según estos vencieren con el fin de que con el producto de tales bonificaciones se pagasen y cancelasen los referidos pagarés. (¹)

---

(¹) Dicho contrato está redactado en inglés. Su texto es el siguiente:

"WHEREAS by resolution adopted on the 26th day of May, 1945, West India Machinery & Supply Co., of which the undersigned are all stockholders, entered into a bonus agreement with Mr. Raymond W. Garffer whereby he was to receive, as long as he should be retained in the capacity of President and General Manager of said corporation, and for a period of fifteen (15) years, a bonus of 50% of the profits of said corporation after deducting the sum of $40,000.00 from said net profit;

"WHEREAS by virtue of said agreement Raymond W. Garffer has received part of such bonuses and has now accrued certain amount of such bonuses, which although they have not been journalized, amount to $57,014.52;

"WHEREAS the said agreement and resolution also contemplated that said bonuses should be applied to the purchase of sufficient stock of West India Machinery & Supply Co. by Raymond W. Garffer to bring up his stockholding interest in said corporation to 40% of the issued capital stock thereof;

"WHEREAS by resolution of this date approved by the stockholders of said West India Machinery & Supply Co., it was decided, with the consent of Raymond W. Garffer, to discontinue the said bonus agree-

Como parte de la instrumentación de dicho contrato, según las determinaciones de hecho del tribunal de instancia, en cada uno de los cinco años posteriores al referido contrato, que

ment and rescind the same, and in consideration therefor, it was agreed that the corporation would issue to Raymond W. Garffer 883.1657 shares of its capital stock, which amount would bring Mr. Garffer's stockholding interest to 40% of the issued capital stock, and it was further agreed that in payment thereof Raymond W. Garffer would issue six notes payable each year for six years in an amount of $11,402.92 the first one, $11,402.90 each of the following four notes and $31,302.05 the sixth note;

"WHEREAS the total amount of said notes would come to $88,316.57, of which amount Raymond W. Garffer has already earned as bonus $57,014.52, and it is expected that he will earn an additional bonus for this current year;

"WHEREAS the stockholders hereinafter appearing have agreed that Raymond W. Garffer shall not be called upon to pay the $57,014.52 which he has already earned, nor such amount as he may earn during the current year, but has issued notes therefor;

"Now, in consideration of the mutual benefits to all parties accruing, it is agreed as follows:

"1. The undersigned stockholders agree that, as each one of the first five notes signed on this date by Raymond W. Garffer matures, they shall cause West India Machinery & Supply Co. to adopt a resolution authorizing the payment of a bonus to Raymond W. Garffer in the amount of each of said first five notes, which bonuses shall be applied to the payment and cancellation of said five notes.

"2. The stockholders further agree that at the end of the present fiscal year of the corporation the bonus corresponding to Raymond W. Garffer for the year 1948 shall be computed as if the bonus agreement had stayed in full force and effect for said fiscal year 1948. If the amount of said bonus shall exceed the sum of $31,302.05, then the undersigned stockholders undertake that, at maturity of the sixth note, they shall cause the adoption by West India Machinery & Supply Co. of a resolution granting such bonus to Raymond W. Garffer up to the amount of $31,302.05, and said bonus shall be applied to the payment and cancellation of the said note, it being understood that Mr. Raymond W. Garffer shall not receive any amount in excess of the said amount of $31,302.05.

"3. If the said bonus for 1948 shall not reach the sum of $31,302.05 then, whatever amount is earned during 1948 shall be voted, at or before maturity of the sixth note as a bonus as partial payment for the said sixth note, and Mr. Raymond W. Garffer will then be obligated to pay whatever amount may be necessary to make up the full $31,302.05, when the said sixth note shall mature.

"4. It is understood that, inasmuch as the above mentioned notes

incluye los años 1951 y 1952 aquí envueltos, la recurrente pagó a Garffer, el bono convenido, sumando el total para los cinco años $57,014.52. El balance de $31,302.05 (representado por el sexto pagaré) del valor total de las acciones, o sea de la suma de $88,316.57, lo pagó la recurrente a Garffer en distintas cantidades durante los años 1953, 1954 y 1955. Garffer percibió un sueldo de $9,000 en 1951 y 1952 y de $14,000 en 1953 a 1955, además de otra bonificación equivalente al 50% del sueldo anual correspondiente.

El recurrido rechazó como gasto deducible de los ingresos de la recurrente las bonificaciones pagadas a Garffer de acuerdo con el referido contrato y en tal virtud notificó a aquella ciertas deficiencias resultantes en cada uno de los años 1951 a 1955 ambos inclusive. Además, según la notificación de cómputo de 4 de octubre de 1961, se redujo la deducción por razón de gastos de operación y depreciación de la embarcación antes mencionada a un 10% de las partidas reclamadas, o sea a $597.03 en 1954 y a $999.57 en 1955.

No conforme con estas determinaciones del recurrido, la reclamante radicó demanda ante el Tribunal Superior, Sala de San Juan, solicitando se dejaran sin efecto las deficiencias tasadas por el recurrido. Al efecto alegó que éste no ha admitido como deducción las bonificaciones pagadas por el recurrente a Garffer durante los años 1951 a 1955 y se niega a

provide for payment of interest after maturity, the stockholders undertake to cause the said bonuses to be paid at or before maturity, so that in no event shall Raymond W. Garffer be called upon to pay any interest and that, if for some unforseen reason, payment of said bonuses cannot be made at maturity, then the stockholders agree that they will cause West India Machinery & Supply Co. to adopt the necessary resolution or resolutions condoning any such interests.

"5. It is further agreed that in the event of the death of Raymond W. Garffer, his heirs or one of his heirs shall be placed in such position by West India Machinery & Supply Co. as will justify and warrant the continuation of this agreement until the same shall have been fully complied with, since it is the intention of the parties that Mr. Raymond W. Garffer's heirs shall receive the full benefit of this agreement without jeopardizing the tax benefits accruing herefrom."

aceptar como deducibles los gastos incurridos por la demandante durante los años 1954 y 1955 en la operación y depreciación de la embarcación antes mencionada. Contestó el recurrido negando en parte las alegaciones de la demanda y aduciendo además que " *los pagos hechos a Garffer durante el periodo de 1951 a 1955, ambos inclusive, no constituyen bonificación por servicios actualmente prestados, sino dividendos pagados por la demandante.*" (Énfasis nuestro.)

Visto el caso en su fondo, el tribunal de instancia dictó sentencia en 13 de septiembre de 1961 declarando sin lugar la demanda excepto en cuanto a las deficiencias por razón de gastos de depreciación y operación de la referida embarcación las que se anularon en un 10%. Dicho dictamen se basó en que no hubo base en la prueba que establezca la razonabilidad de dicha remuneración en los años en que se obtuvieron los beneficios y se prestaron los servicios remunerados ni nada que justifique la novación de la obligación asumida por la demandante bajo el contrato de 1945.

Apunta la recurrente en este recurso la comisión de los dos errores por el tribunal de instancia, a saber:

1. Que es errónea la conclusión de hecho Núm. 5 de que la recurrente "no ofreció prueba para justificar la razonabilidad de la remuneración adicional a su sueldo que se convino pagar por sus servicios al señor Garffer" así como es errónea también la conclusión de derecho Núm. 1 de que no hay base en la prueba "que establezca la razonabilidad de dicha remuneración."

2. Que es errónea también la conclusión limitando al 10% la deducción de los gastos de depreciación y operación y por concepto de depreciación de la referida embarcación la deducción que ésta podía hacer como gastos ordinarios del negocio durante los años 1954 y 1955.

1.—En apoyo del primer apuntamiento señala la recurrente que en ningún momento cuestionó el recurrido la razonabilidad del pago, o si los servicios habían sido efectiva-

mente prestados; por el contrario el tribunal de instancia encontró probado que Garffer había prestado servicios a la recurrente; que si se alegaba que las bonificaciones cuestionadas eran dividendos, no puede exigírsele al contribuyente que pruebe su razonabilidad; que hay suficiente prueba en el récord para sostener la razonabilidad de la remuneración consistente en cifras de ingresos brutos de la recurrente de aproximadamente dos millones de pesos en cada uno de los años 1951 a 1955 ambos inclusive, de ingresos netos de $150,000 a $290,000 anuales durante dicho período, de la existencia de un núcleo de 78 empleados, resultando irrisorio el sueldo de Garffer de $9,000 y luego $14,000 ante la magnitud de sus servicios y del volumen de negocios realizados por la recurrente. Arguye además la recurrente que no habiendo practicado prueba el recurrido, de acuerdo con la doctrina que expusimos en *Carrión* v. *Tesorero de P.R.*, 79 D.P.R. 371 (1956), la prueba del contribuyente debe ser pesada independientemente de la presunción de corrección, "del manto de corrección que cubre las determinaciones administrativas" del recurrido, a los fines de determinar si la misma sostiene su contención; y que dicha prueba es digna de crédito pues no ha sido impugnada.

Por el contrario informa el Procurador que el fundamento aducido por el recurrido para rechazar las deducciones en cuestión estaba concebido en términos amplios de manera que el tribunal de instancia no resolvió este caso por un fundamento adicional o diferente al expuesto por el recurrido; que el recurrente no probó, como le correspondía hacerlo, que: 1) la remuneración bajo consideración era razonable—los pagos se devengaron por servicios prestados durante los años 1945–1948, pero la prueba tendió a demostrar la razonabilidad de esos pagos durante los años 1951 a 1955; 2) los pagos en cuestión constituían una compensación por servicios—los términos del contrato previamente relacionados evidencian la intención de las partes de que los pagos se harían con el fin de

permitir a Garffer adquirir 40% de las acciones de la corporación; además, parece ilógico que durante los años de mayor actividad de la empresa, o sea de 1951 a 1955, la recurrente no proveyera para Garffer la bonificación adicional rechazada y por el contrario le pagase una remuneración sustancialmente menor; 3) el propósito evidente del referido contrato era que uno de los miembros de la familia Garffer tuviese el control en la formulación de la política económica de la corporación y conforme a ese propósito el contrato se cumplió y se dio por terminado tan pronto Garffer acumuló suficientes bonificaciones para comprar, como compró hasta el 40% de las acciones de la recurrente; 4) los pagos hechos puedan tener el carácter de dividendos aunque no guarden relación con la tenencia de acciones de Garffer.

Por último, en vista de que el tribunal de instancia no formuló conclusiones de hecho respecto a la intención de las partes al formalizar el acuerdo de 1948, indica el Procurador General que podría devolverse el caso para que se formulen esas conclusiones.

A los fines de resolver, creemos necesario hacer un breve resumen del derecho aplicable a la cuestión bajo consideración.

La Sec. 32 (a) (1) de la Ley de Contribución sobre Ingresos de 1954 (13 L.P.R.A. sec. 3023 (a) (1) (A), admite, entre otras deducciones, "Todos los gastos ordinarios y necesarios pagados o incurridos durante el año contributivo en la explotación de cualquier industria o negocio, incluyendo una *cantidad razonable para sueldos u otra compensación por servicios personales realmente prestados; . . .*" (Énfasis nuestro.)

La presunción de corrección de las determinaciones del Secretario de Hacienda desaparece tan pronto se ofrece y recibe evidencia creíble y razonable que sostenga la posición del contribuyente y toca al Secretario de Hacienda presentar prueba en apoyo de su contenciones, debiendo el tribunal sentenciador determinar los hechos envueltos como en

cualquier otro caso civil, o sea, a base de la preponderancia de la prueba. *Reyes García* v. *Secretario de Hacienda*, 84 D.P.R. 596 (1962) ; *Central Igualdad, Inc.*, v. *Srio. de Hacienda*, 83 D.P.R. 45 (1961) ; *Carrión*, supra; *Huckins Tool & Die. Inc.*, v. *C.I.R.*, 289 F.2d 549 (7th Cir. 1961). En la etapa de revisión judicial el Secretario puede además aducir fundamentos adicionales e inconsistentes para sostener la determinación de deficiencia, pero cuando esto ocurre se requiere que estos otros fundamentos se aleguen específicamente por vía de defensa afirmativa y de no hacerlo así, no le cobija la presunción de corrección y, por lo tanto, le correspondería el peso de la prueba. *Ramón* v. *Secretario de Hacienda*, 84 D.P.R. 440 (1962). Las deducciones, siendo una gracia legislativa, deben interpretarse restrictivamente en contra de la persona que alegue tiene derecho a ellas. Cuando media una corporación íntima o de familia *(close or family corporation)*, la corporación contribuyente debe ofrecer una prueba más robusta de razonabilidad de los salarios pagados que en otras ocasiones. *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509 (1954) ; *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 585 (1947) ; *Sobrinos de Izquierdo, Inc.* v. *Sancho Bonet, Tes.*, 56 D.P.R. 182 (1940).

La cuestión de si los sueldos son razonables o no es una de hecho a determinarse por el tribunal de instancia y esta corte sólo podría alterar la conclusión a que llegara dicho tribunal en el caso de que del récord no apareciera que existía suficiente evidencia para sostener las conclusiones de aquél. *Casanovas & Cía.* v. *Soltero*, 61 D.P.R. 653 (1943). Al determinar la razonabilidad de salarios deben considerarse distintos factores tales como la naturaleza de los servicios realmente prestados por el empleado, los resultados atribuibles a tales servicios, si el contribuyente recibió la atención exclusiva del empleado y si éste prestó sus servicios exclusivamente al contribuyente a cambio de la compensación; si las cantidades designadas como compensación son pagadas a los emplea-

dos-accionistas en proporción aproximada a su tenencia de acciones, los pagos hechos por el contribuyente de dividendos como tales, la comparación de la compensación controvertida y la compensación (bien total o a razón por producto vendido) pagada durante otros años cuando los deberes y responsabilidades del empleado eran más o menos las mismas, el ingreso bruto y el neto del contribuyente y la relación, si alguna, entre la compensación y las operaciones y condiciones económicas del contribuyente; la comparación entre la compensación controvertida y las cantidades pagadas por empresas dedicadas a actividades parecidas por trabajo similar, los antecedentes y entrenamiento del empleado, su capacidad anterior para derivar ingresos y su adaptabilidad para las tareas que realizó para el contribuyente; si la compensación se fijó al final del año fiscal cuando los beneficios pueden estimarse con certeza; si el método utilizado por el contribuyente para compensar a sus empleados está en consonancia con las prácticas usuales de la industria (no obstante que los bonos o remuneración "usual" no se aceptaran como deducibles), a menos que por otras razones constituyan compensación razonable por servicios de significación realmente rendidos; si el motivo eliminativo de contribuciones *(tax avoidance motive)* de obtener una deducción en un año de altas tasas contributivas sobre ingresos corporativos ha inducido la decisión de pagar la alegada compensación; y si *había la intención de que la cantidad pagada como compensación fuese de hecho tal cosa.* *Buscaglia, Tes.* v. *Tribl. de Contribuciones,* 65 D.P.R. 361 (1945); *King, Quirk & Co., Inc.* 61274 P-H Memo T.C. (Vol. 30, pág. 1561 (1961)); 4 Mertens, *Law of Federal Income Taxation,* sección 25.69. (²)

---

(²) Washington & Rothschild, *Compensating the Corporate Executive,* Vol. II, 758 (3rd ed. The Ronald Press Company (1962)); Frommer, Jr., *Compensation and Its Fringes,* N.Y.U. 21st Inst. on Fed. Tax 375, 378; Brodsky, *What Constitutes Reasonable Compensation; Contingent Compensation Plans; Factors in Proving Reasonableness of Compensation,* N.Y.U. 19th Inst. on Fed. Tax 169, 174; Wolder, *How the Tax Court Treats Reason-*

■ La determinación de si un pago de alegada compensación es en realidad un pago de dividendo no depende exclusivamente de que se haya hecho a los accionistas en proporción a su tenencia de acciones. En *Central Igualdad, Inc.,* supra, resolvimos que bonificaciones hechas por una empresa azucarera a sus colonos directores y accionistas de 50¢ por tonelada de caña superior entregada al molino de la empresa en determinados meses constituía una distribución de dividendos y específicamente dijimos que la ausencia de identidad proporcional entre el por ciento de acciones poseídas por cada colono accionista con el total de acciones emitidas por la demandante y el por ciento de lo pagado en concepto de bonificaciones no es decisivo "ya que una distribución puede considerarse como un dividendo aunque no haya mediado una acción formal de la junta de directores en cuanto a su declaración, o la distribución no sea en proporción al interés de cada accionista en el capital corporativo, y aun cuando haya accionistas que no participen en la distribución." *Darco Realty Corp.* v. *C.I.R.,* 301 F.2d 190 (2d Cir. 1962); *Heil Beauty Supplies* v. *Commissioner of Internal Revenue,* 199 F.2d 193 (8th Cir. 1952); *Ecco High Frequency Corp.* v. *Commissioner of Internal Revenue,* 167 F.2d 583 (2d Cir. 1948). Dijimos, además, en *Central Igualdad, Inc.,* supra, que reiteradamente hemos resuelto que en cuanto se refiere a la apreciación de prueba documental nos encontramos en las mismas condiciones que el tribunal sentenciador. La compensación razonable que cualifica como gasto ordinario y necesario por servicios personales realmente rendido en un período puede pagarse por la empresa que los recibe de sus ingresos derivados durante períodos subsiguientes. *Lucas* v. *Ox Fibre Brush Co.,* 281 U.S. 115 (1930); *Associated Theatres Corporation, Petitioner,* v. *Commissioner of Internal Revenue, Respondent,* 14 T.C. 313

---

*able Compensation,* 39 Taxes 473; Johnson, *Reasonable Corporate Salaries,* 20 Ind. L.J. 83. Nota—*The deduction of a reasonable allowance for salaries— The undefined power of the Commissioner,* 56 Harv. L. Rev. 997.

(1950); R.T. Bochm, *Compensation Arrangements in Smaller Corporations*, 29 Cinn. L. Rev. 157 175. En *Lucas*, supra, la prueba demostró que la empresa recibió cuantiosos beneficios *durante los años en que se rindieron los servicios.*

■ El recurrido no aadujo como razón para las deducciones rechazadas ni alegó como defensa en su contestación que la bonificación no constituía una "cantidad razonable para sueldos u otra compensación por servicios realmente prestados." Por lo tanto, como dijimos en *Ramón*, supra, le correspondía al recurrido el peso de probar la irrazonabilidad de la compensación. En vista de que no presentó prueba al efecto erró el tribunal de instancia al confirmar las deficiencias notificadas por la razón de que no había base en la prueba "que establezca la razonabilidad de las deducciones en cuestión en los años que mayor beneficio obtuvo y en que los servicios remunerados fueron supuestamente prestados."

■ No obstante, procede la confirmación de la sentencia recurrida aunque por distinto fundamento. Una consideración detenida del contrato celebrado por los accionistas de la recurrente en 1948 demuestra, sin embargo, que esas bonificaciones debían aplicarse a la compra de acciones emitidas por la recurrente y de hecho por virtud de dicho contrato se emitieron las acciones necesarias a Garffer y su valor se pagó con el producto de la referida bonificación acumulado durante el período 1945 al 1948, pero derivado en gran parte de los ingresos de la recurrente provenientes en su mayoría de los años 1951 al 1955, ambos inclusive. Se trataba, pues, de unos pagos hechos con el propósito de adquirir propiedad y no como compensación razonable por servicios realmente prestados. Como indica el Procurador, parece ilógico que para un período de mayor actividad económica, o sea el período de 1951 al 1955, en que el trabajo de Garffer debe haber aumentado aunque sus responsabilidades se mantuviesen iguales, su remuneración mermase al compararla con la que alega que percibió durante el período de 1945 al 1948. La recurrente

no demostró que al convenirse tales bonificaciones hubiere la intención de que las cantidades así pagadas se tuviesen como tal compensación.

2.—La prueba en apoyo de la deducción por razón de gastos de depreciación y operación de la embarcación rechazada consistió de la declaración de Raymond Garffer al efecto de que la recurrente adquirió una embarcación Chriscraft, de 37 pies de largo, tipo crucero, que se usaba "mayormente para placer, para promoción . . . placer de los relacionados con el negocio de la recurrente incluyendo los empleados"; que su familia no la usaba; que él, Garffer, la usaba cuando tenía algún cliente del negocio en la embarcación, relacionando al efecto los nombres de varios de los clientes que usaron la embarcación. Garffer no pudo precisar qué por ciento de los viajes de la embarcación eran estrictamente de negocio, admitiendo que no todos eran del negocio, muy pocos de placer, pues él no tenía tiempo; que se usaba la lancha para fomentar la venta de material y herraje marítimo que la recurrente vendía. Se presentó en evidencia, sin objeción, el libro de faena o tarea, o sea el cuaderno de bitácora, de la embarcación. Del mismo aparece que se usó por personas que llevaban el apellido Garffer, tales como Pilar Garffer y Ray, Jr. Aunque muchas de las personas a que hizo Garffer referencia en su testimonio al efecto de que eran clientes o en otra forma relacionados con el negocio y que fueron agasajados en la embarcación aparecen en dicho cuaderno, no es menos cierto que según el referido cuaderno, la embarcación se usó un tiempo sustancialmente mayor en faenas cuya relación con el negocio de la recurrente no se comprobó.

En *Carrión*, supra, determinamos que la deducción por concepto de gastos de viaje y representación puede establecerse por cualquier evidencia admisible y digna de crédito aunque no sea en forma exacta y cabal (en dicho caso dicha evidencia consistió del propio testimonio del ejecutivo que incurrió en tales gastos) en ausencia de listas de cuentas, comprobantes,

facturas, recibos y récords; y que debe concederse la deducción a base de una apreciación de lo que de ordinario y según el buen sentido económico, en vista de todas las circunstancias del caso y del negocio del contribuyente, constituya una cantidad razonable por dichos conceptos; *al hacer este cálculo aproximado el tribunal sentenciador tiene una discreción amplia que raras veces puede ser alterada en apelación.*

■ El hecho de que no se sentaran las bases necesarias para la admisibilidad del referido cuaderno de bitácora es inmaterial, ya que no se objetó su admisión. Cuando el uso de la embarcación y el entretenimiento en ella se lleva a cabo por el accionista que controla la empresa, ésta lleva la pesada carga de probar qué porciones de los gastos estaban relacionados de cerca con el negocio y que tales gastos eran ordinarios y necesarios del negocio. *United Aniline Company,* 62060 PH Memo. T. C. (Vol. 31, pág. 371 (1962) ).

Considerada toda la evidencia presentada, concluimos que la determinación del tribunal de instancia al efecto de que sólo el 10% de los gastos de depreciación y operación de la embarcación en cuestión eran deducibles está sostenida por la prueba.

*Por los motivos consignados se confirmará la sentencia apelada.*