JUAN SUÁREZ FUENTES, ETC., demandante y recurrido, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-69-204          *Resuelto:* 24 de mayo de 1971

*Gilberto Gierbolini, Procurador General,* y *Américo Serra, Procurador General Auxiliar,* abogados del recurrente; *Ramírez, Segal & Latimer,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

¿Son ingresos tributables de una sociedad y de los dos hermanos que la constituyen, el 50% de la renta producida por un edificio comprado por ellos en vista del contrato celebrado por ellos con su señora madre que dispuso que ésta asumiría la administración de dicha propiedad y recibiría el 50% de la renta por tal servicio? Concluimos que sí.

Los hechos que motivan la controversia en este caso son los siguientes:

Por la escritura Núm. 9 de 15 de septiembre de 1949 titulada "Cesión de Rentas", otorgada ante el notario Víctor A. Coll, los hermanos Juan y José Suárez Fuentes, dueños de un solar y edificio conocido como Ocean Walk Apts., contiguo a los terrenos del antiguo Parque Borinquen, en el Condado, San Juan, P.R., propiedad que adquirieron en 13 de marzo de 1946, la Sra. Encarnación Fuentes asumió la administración de dicha propiedad por un término de 20 años, conviniéndose que retendría, como pago por tales servicios, el 50% del total neto del remanente líquido de las rentas de dicho edificio debiendo entregar a los hermanos Suárez Fuentes el importe de la otra mitad.

En marzo de 1966 se radicaron demandas contra el Secretario de Hacienda por cada uno de dichos hermanos, y dos por la sociedad de los dos, solicitando se anulen deficiencias por los años 1956 a 1960, ascendentes a las siguientes sumas:

| Juan Suárez Fuentes | $ 6,723.28 |
|---|---|
| Sociedad de Juan y José Suárez Fuentes | 14,506.24 |

José Suárez Fuentes        5,991.41

Sociedad de Juan y José

Suárez Fuentes        14,906.24

En su contestación, el recurrente Secretario de Hacienda alegó que la mayoría de tales deficiencias son atribuibles a los beneficios distribuidos por la referida sociedad cuya existencia fue computada de acuerdo con las disposiciones de la Sec. 411(a)(3) de la Ley de Contribución sobre Ingresos de 1954.

Según la minuta de la vista celebrada en 16 de marzo de 1967, las partes estipularon, que: "se le concederá a la sociedad una deducción por la suma de $204.34 para el año 1956 y que el Secretario de Hacienda concederá a la sociedad una deducción, o sea, que deduciría del ingreso atribuible a los socios por concepto de beneficios provenientes de la sociedad aquellas cuantías que como resultado del presente caso se impusieran a la sociedad en concepto de contribución sobre ingresos."

En su determinación, el tribunal de instancia concluyó que los hermanos Suárez Fuentes tenían constituida una sociedad para los años contributivos en cuestión la cual operaba el edificio Ocean Walk Apartments; que esta propiedad fue adquirida por dichos hermanos, gracias a un préstamo de $50,000 que les hizo su señora madre, Doña Encarnación Fuentes, el cual no conllevaba el pago de interés alguno; que el referido préstamo se hizo en consideración a que los hermanos recurridos le diesen la referida administración del mencionado edificio mediante el pago del 50% de las rentas producidas por dicha propiedad según la antes mencionada escritura de "Cesión de Rentas" otorgada años antes de determinarse las deficiencias en controversia; que el tribunal de instancia en otra acción sostuvo el referido contrato de administración por lo cual debía prevalecer el empleo de Carola Nadal por Doña Encarnación Fuentes para asistirla

en la referida administración mediante paga; que durante los años en cuestión Doña Encarnación se mantuvo activa y alerta y mantuvo una administración adecuada del edificio.

El tribunal de instancia hizo las siguientes conclusiones de derecho, entre otras, que: (1) el contrato contenido en la referida escritura Núm. 9 fue válido y obligó a las partes a su fiel cumplimiento; (2) durante los años contributivos en cuestión el referido contrato estuvo vigente y Doña Encarnación cumplió a cabalidad su parte del contrato; (3) el pago del 50% de las rentas del edificio a Doña Encarnación era un gasto legítimo del negocio de operaciones del edificio.

En tal virtud, el tribunal de instancia dictó sentencia, entre otras cosas, anulando las deficiencias en tanto en cuanto proceden de la negativa del recurrente a aceptar como deducibles los sueldos pagados por la sociedad de los hermanos Suárez Fuentes, durante los años contributivos en cuestión, a Doña Encarnación; que el recurrente "deducirá de los ingresos atribuibles a los socios en concepto de beneficios provenientes de la sociedad aquellas cuantías que como resultado de esta Sentencia venga obligada a pagar dicha Sociedad en concepto de deficiencias en su contribución sobre ingresos."

En reconsideración, aclaró el tribunal de instancia que:

". . . surge de la prueba en el ánimo del juzgador que no hubo en nada de lo actuado el propósito de utilizar método o subterfugio alguno para desviar el impacto contributivo a alguna fuente que no hubiese producido los ingresos. Y efectivamente, los ingresos se distribuyeron en la forma declarada en planilla. No ha habido ingreso adquirido a nombre de otro. Este convencimiento surge de varios factores, que detallamos:

a) la transacción completa se celebró ante litem motam, antes del litigio;

b) todavía no se había resuelto que el negocio de los hermanos Suárez Fuentes era una sociedad;

c) existía una furiosa enemistad entre los hermanos, a esa época. (Véase al efecto carta de Introducción de la investigación de la planilla de oficio de 1956, anexa a la misma, párrafos 1ro. y 8vo.)

d) se litigó y puso en duda judicialmente las facultades de la administración bajo el contrato de administración.

e) la planilla de la administradora informaba los ingresos provenientes de esas rentas todos los años, hasta que un inspector del demandado le dijo no tenía que hacerlo. (Véase carta manuscrita de la administradora anexa a su planilla de 1959, dirigida al demandado, que lee: 'Deseo hacer constar que durante el año de 1959 *recibí* $5,086.99 por concepto de administración del edificio Ocean Walks Apts. pero que *según fuí informada por el inspector* que me investigó hasta el año 1958, estos ingresos no son tributables para mí.') [Énfasis en el original.]

A esto queremos añadir que el tratamiento que le dio el demandado en la investigación y la etapa administrativa fue que se trataba de un 'donativo'. Por contraposición no puede ser donativo cuando el origen de la adquisición del edificio se hizo posible por un préstamo de $50,000.00 hecho por la madre a sus hijos y el cual no devengaba intereses de clase alguna. Lo recibido por concepto del contrato de cesión de rentas excedía por poco el crédito comercial de un préstamo de esa índole.

Si el contrato no fue simulado ni hecho con propósitos de eludir la contribución, ni imputar ingresos a quien no los recibió, aun cuando en su resultado final resulte en una menor contribución, eso, de por sí, no lo hace anulable. El contrato tenía suficiente causa entre las partes, fue enforzado y, como tal, obliga a las partes y, por ende, al Secretario."

En apoyo de su recurso de revisión apunta el recurrente que el tribunal de instancia incidió al resolver que los servicios prestados por Doña Encarnación ameritaban un pago de un 50% de las rentas del edificio; la cuantía de dicho pago era razonable y un gasto necesario y ordinario de la explotación del negocio; que Doña Encarnación prestó los servicios por los cuales supuestamente se le pagaba. Además, apunta que incidió al considerar y aplicar preceptos del Código Civil a una controversia sobre derecho tributario; al interpretar el contrato; así como al analizar la prueba y al anular las deficiencias.

De entrada debe puntualizarse un hecho probado al cual el tribunal de instancia no le dio consideración alguna.

Surge del testimonio de José Suárez Fuentes. Este testimonio es el que revela que al presentársele a los dos hermanos Suárez Fuentes la oportunidad de comprar el edificio Ocean Walk Apartments, y no teniendo ellos el dinero suficiente, su señora madre, Doña Encarnación Fuentes, la prestó $50,000 "con la condición de que teníamos que cederle la administración del edificio y la mitad de las rentas." A esta parte de dicho testimonio le dio crédito el tribunal a pesar de que el préstamo en cuestión necesariamente se hizo en 1946, cuando se adquirió la propiedad, y no fue hasta más de tres años después, en 15 de septiembre de 1949, cuando los hermanos convinieron que Doña Encarnación asumiese la administración de la propiedad en pago de lo cual se le pagaría el 50% de la renta. Sin embargo, el tribunal de instancia aparentemente no dio crédito alguno a aquella parte del testimonio de dicho testigo que inmediatamente a continuación de la anterior declaración dijo que ella no cobró intereses por ese préstamo porque "fue un préstamo familiar . . . lo recuperó de las rentas del edificio. . . ."

Juan Suárez Fuentes testificó que desde el 1946, cuando él y su hermano compraron la propiedad en cuestión, su padre, Sr. Marcial Suárez, administró la propiedad hasta 1949 cuando se incapacitó; que entonces se otorgó la escritura de cesión de rentas bajo la cual Doña Encarnación asumió dicha administración. Este testimonio, no revela las condiciones bajo las cuales Don Marcial administraba la propiedad. La escritura en cuestión no hace referencia alguna a dicha administración. Tampoco reconoce crédito alguno de rentas pagadas o retenidas por Don Marcial en concepto de remuneración por sus servicios de administración o como abonos al préstamo que les hizo Doña Encarnación a sus dos hijos aquí recurridos, presumiblemente en 1946, a los fines de comprar entonces la propiedad en cuestión. Aún más, dicha escritura no indica en forma alguna que la administración de la propiedad y el 50% de su renta se le cede a Doña Encar-

nación como condición de un préstamo que ella le hizo a sus dos hijos tres años y medio antes.

Aunque el tribunal de instancia concluyó que "Lo recibido por concepto del contrato de cesión de rentas excedía un poco el crédito comercial de un préstamo de esa índole." no es menos cierto que a la señora Nadal, quien en efecto ejercía la mayor parte de las funciones de administración de la propiedad en cuestión, sólo se le pagaba el 7% de las rentas que se cobraban. A esos efectos testificó la Sra. Nadal que ella cobraba las rentas de la propiedad, se encargaba de todas las reparaciones, transportaba los empleados y los materiales en su automóvil; hacía las órdenes de compras; que si se necesitaba hacer alguna reparación y el inquilino le daba la queja a Doña Encarnación, ésta le decía "La Sra. Nadal es la que está a cargo de eso y ella es la que decide."

Por otra parte, la prueba demuestra que al asumir la administración de la propiedad Doña Encarnación tenía 79 años, se encontraba medio ciega, tenía "dificultades en caminar" y "no podía coger un carro y [sic] ir a la ferretería, llevar y traer sus empleados." Tampoco aparece de la prueba qué cualificación o experiencia tuviera dicha señora que justificase el cederle la administración de la propiedad mediante el pago del 50% de las rentas.

No hubo prueba demostrativa de que el pago de un 50% de la renta en este caso era una compensación justa y razonable, en consonancia con lo que por tales servicios se cobra por aquellas personas o firmas que se dedican a la administración de los bienes raíces. Sólo aparece la observación del tribunal de instancia de que "Lo recibido por concepto del contrato de cesión de rentas excede por poco el crédito comercial de un préstamo de esta índole.", medida que, a nuestro juicio, no es la propia y adecuada para determinar la razonabilidad de dicha compensación.

En *West India Machinery* v. *Secretario de Hacienda*, 89 D.P.R. 115, 124, 125 (1963), resumimos las normas rela-

cionadas con la deducción por concepto de sueldos u otra compensación por servicios personales realmente prestados provista por la Sec. 32(d)(1) de la Ley de Contribuciones sobre Ingresos de 1954 (13 L.P.R.A. sec. 3023(a)(1)(A); *Clínica Juliá* v. *Sec. de Hacienda*, 76 D.P.R. 509, 530, 531 (1954); *Tes.* v. *Tribl. Contrib. y Trujillo y Subirá*, 70 D.P.R. 574 (1949); *Alonso Sobrino Hnos.* v. *Tribunal Contribuciones*, 66 D.P.R. 892 (1947); *Buscaglia, Tes.* v. *Tribunal de Contribuciones*, 67 D.P.R. 585, 587 (1947); *Sobrinos de Izquierdo, Inc.* v. *Sancho Bonet, Tes.*, 56 D.P.R. 182 (1940). Véase, además, Mertens, *Law of Federal Income Taxation*, secs. 25.63, 25.65, 25.68, 25.69, 25.70, 25.71, y 25.72.

■ Como en *Buscaglia,* supra, resolvimos que no son deducibles los intereses pagados entre parientes, en el caso ante nos las circunstancias parecen ser indicativas de que mediante el contrato de cesión de rentas en cuestión se trató de obviar el impedimento establecido por la ley y la norma de *Buscaglia,* supra.

■ La prueba aducida no sostiene la razonabilidad de la compensación. Parece más bien indicar que es excesiva dada las cualificaciones o ausencia de cualificaciones de la supuesta administradora y el hecho que las funciones principales de la administración la ejercía otra persona mediante una compensación de sólo un 7% de la renta.

Para sostener tal compensación se necesitaba una prueba más robusta y convincente que la presentada, dada la relación de parentesco estrecho existente entre la supuesta administradora y los dueños de la propiedad aquí recurridos.

La prueba, además, tiende a sostener la conclusión que el contrato de cesión de rentas se otorgó como un medio de que Doña Encarnación cobrase un préstamo familiar sin intereses que hizo a sus dos hijos para facilitarles la adquisición del edificio Ocean Walk Apartments.

■ Concluimos, además, que el tribunal de instancia incidió al basar su determinación de anular las deficiencias en cuestión, en gran parte, en que las disposiciones del referido contrato de cesión de rentas eran determinantes. En repetidas ocasiones hemos sostenido que debe acudirse a la Ley de Contribuciones sobre Ingresos, y no al Código Civil, para resolver problemas sobre la responsabilidad contributiva de unas partes, por ser dicha ley el estatuto particular sobre la materia. *Rexach* v. *Srio. de Hacienda*, 96 D.P.R. 913, 918 (1969); *Vda. de Pizá* v. *Secretario de Hacienda*, 86 D.P.R. 211, 215 (1962); *Albanese* v. *Secretario de Hacienda*, 76 D.P.R. 324, 329 (1954); *Semanaz* v. *Sec. de Hacienda*, 76 D.P.R. 411, 416 (1954); *González* v. *Secretario de Hacienda*, 75 D.P.R. 920, 925 (1954); *Wood* v. *Tribunal de Contribuciones y Tes., Int.*, 71 D.P.R. 233 (1950).

No obstante lo dicho, lo cierto es que la propiedad ha sido administrada durante los años en controversia por una o más personas extrañas a los recurridos y que por lo menos un 7% de las rentas se ha pagado como compensación por tales servicios, gastos éstos que son claramente deducibles.

Por lo tanto, *debe revocarse la sentencia del tribunal de instancia y devolverse el caso para que se modifiquen las deficiencias determinadas por el recurrente en armonía con lo expuesto previamente.*